IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-01699-RBJ

A PDX PRO COMPANY, INC., an Oregon Corporation,

    Plaintiff,

v.

DISH NETWORK, LLC, a Nevada limited liability company and
DISH NETWORK SERVICE, LLC, a Colorado limited liability company,

    Defendants.

## ORDER

This case is before the Court on defendant's motion to dismiss plaintiff's civil conspiracy and declaratory judgment claims. [Docket #59].

**Facts and Procedural History**

On December 2, 2006 plaintiff A PDX Pro Company, Inc. (PDX) entered into a contract with Dish Network Services (DNS) for PDX to provide installation and after sales services for DNS customers (Installation Services Agreement). The contract contained a forum selection clause that read:

> This Agreement and the relationship between the parties, including all disputes and claims, whether arising in contract, tort or under statute, shall be governed by, interpreted under and enforced in accordance with the laws of the State of Colorado. The federal and state courts of the State of Colorado shall have exclusive jurisdiction to hear and determine any claims, disputes, actions, or suits which may arise under or with respect to this Agreement.

Installation Services Agreement at 7. [#25-1]. PDX worked under this contract until August 10, 2011 when the contract was terminated.

Plaintiff alleges that under the Installation Services Agreement, it worked with both DNS and its affiliate company Dish Network, LLC. According to plaintiff, DNS and Dish Network, LLC, forced PDX to comply with business rules that were not reasonable and made it impossible for PDX to perform under the Installation Services Agreement or collect fees that it was owed. In December 2010 PDX signed a Retailer Agreement with Dish Network, LLC. PDX explains that Dish Network required all installers to sign this agreement if they wanted to continue to do business with DNS. The Retailer Agreement contained an arbitration clause that provided:

> [A]ny and all disputes controversies or claims between Retailer and/or any of its Affiliates, on the one hand, and DISH and/or any of its Affiliates, on the other hand, including without limitation any and all disputes, controversies or claims arising out of or in connection with this Agreement . . . shall be resolved solely and exclusively by binding arbitration . . . ."

Retailer Agreement at 25. [#47-1].

In June 2012 PDX filed suit against both DNS and Dish Network, LLC alleging breach of contract, quantum meruit, negligent misrepresentation, breach of the duty of good faith and fair dealing, civil conspiracy, and breach of retail agreements. It sought a declaratory judgment. [#2]. Then, in August 2012, PDX filed a notice of voluntary dismissal without prejudice and stipulation dismissing Dish Network, LLC. [#17]. The stipulation provided that PDX and Dish Network, LLC would resolve claims between them pursuant to the terms set out in the Retailer Agreement.

DNS filed its first motion to dismiss plaintiff's declaratory judgment claim on October 5, 2012. [#22]. On February 8, 2013 PDX filed a motion for leave to file a second amended complaint and rejoin Dish Network, LLC. [#40]. DNS objected. [#46]. The Court heard oral argument on both of these motions on April 4, 2013. Following the hearing, the Court granted DNS's motion to dismiss the declaratory judgment claim. This Court also granted PDX leave to rejoin Dish Network, LLC and file an amended complaint, but rather than accepting the

2

proffered second amended complaint, the Court allowed PDX time to draft and file a third amended complaint. The Court stayed litigation between PDX and the rejoined Dish Network, LLC, pending arbitration to determine the scope of the arbitration clause contained in the Retail Agreement. Plaintiff filed its third amended complaint on April 23, 2013. [#56]. In that complaint, PDX elected not to bring claims against Dish Network, LLC, but rather only allege claims against DNS. PDX's third amended complaint added a new declaratory judgment claim and a civil conspiracy claim, alleging a conspiracy between DNS and Dish Network, LLC, as a non-party co-conspirator. [#59].

**Analysis**

DNS argues that plaintiff's civil conspiracy and declaratory judgment claims should be dismissed both because this Court did not grant leave to add new claims and because these claims fail on their merits.

*Leave to File a Third Amended Complaint*

DNS argues that when this Court granted leave to file a third amended complaint, it did so narrowly and plaintiff's claims for civil conspiracy and declaratory judgment are outside of the leave granted. I disagree. First, in its motion for leave to file an amended complaint, PDX specifically requested to add a civil conspiracy claim which it claimed it had inadvertently eliminated when it removed Dish Network, LLC as a defendant. [#40]. In granting plaintiff's motion to amend, this Court asked plaintiff's counsel "do you want me to accept the second amended complaint, or do you want an opportunity to further revise it and file a third amended complaint?" Hr'g Tr. 59:25-60:3, April 4, 2013. When ruling the Court did not grant narrow leave to amend but rather permitted plaintiff two weeks to revise and file an amended complaint.

Because the Court granted broad leave to amend, plaintiff's Third Amended complaint was not beyond the scope of the leave granted.

*Declaratory Judgment*

In its Third Amended Complaint, PDX seeks a declaratory judgment that the limitation of damages provision in the Installation Services Agreement is unenforceable. DNS argues that this claim should be dismissed as duplicative of PDX's first claim for relief which seeks damages for breach of contract. The Court already examined this issue in defendant's first motion to dismiss the declaratory judgment claim:

> The Court finds that there's really no dispute anymore as to whether or not the installation agreement has been terminated in accordance with its terms. Accordingly, although the Court certainly may be and likely will be called upon to interpret the terms in deciding the breach of contract dispute under the installation agreement, there is no forward-looking need to determine the rights and obligations of the parties.

Hr'g Tr. 56:5-12.

PDX does not offer any argument that there is now a forward-looking need to determine its rights or obligations. Rather, "PDX is simply asking the Court to determine that if the trier of fact finds that Dish breached the contract and the implied covenant of good faith and fair dealing, then Dish should be subject to the types of damages it tried to prohibit in the Installation Agreement." Pl.'s Resp. at 11. [#64]. Applying the same standard that the Court applied to defendant's first motion to dismiss the declaratory judgment claim, the Court finds that there is still not a forward-looking need to resolve the damages available to PDX under the Installation Services Agreement. Rather, this is an issue that will be resolved in deciding plaintiff's allegations of breach of contract and duty of good faith and fair dealing in claim one. Defendant's motion to dismiss the declaratory judgment claim is granted.

*Civil Conspiracy Claim*

Whether plaintiff's civil conspiracy claim should be heard in this Court or before an arbitration panel centers on the forum selection clause in the Installation Services Agreement and the arbitration clause in the Retailer Agreement.

The Installation Services Agreement between PDX and DNS signed in 2006 contained a forum selection clause that provides:

> This Agreement and the relationship between the parties, including all disputes and claims, whether arising in contract, tort or under statute, shall be governed by, interpreted under and enforced in accordance with the laws of the State of Colorado. The federal and state courts of the State of Colorado shall have exclusive jurisdiction to hear and determine any claims, disputes, actions, or suits which may arise under or with respect to this Agreement.

Installation Services Agreement at 7. [#25-1]. The Retailer Agreement between PDX and Dish Network, LLC provides:

> [A]ny and all disputes controversies or claims between Retailer and/or any of its Affiliates, on the one hand, and DISH and/or any of its Affiliates, on the other hand, including without limitation any and all disputes, controversies or claims arising out of or in connection with this Agreement . . . shall be resolved solely and exclusively by binding arbitration . . . ."

Retailer Agreement at 25.

PDX argues that based on these conflicting provisions, it had two options to bring a civil conspiracy claim: to bring suit in federal court and allege that Dish Network, LLC was a non-party defendant or to bring the claim against both Dish Network, LLC and DNS before an arbitration panel in violation of the Installation Services Agreement. Pl.'s Resp. 9-10. [#64]. DNS on the other hand relies on a Second Circuit case, *Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278 (2d Cir. 2005), to argue that the two clauses can be read together to mandate that the claim be brought before an arbitration panel pursuant to the arbitration clause and then enforced by the federal or state courts of Colorado pursuant to the forum selection clause.

5

In *Bank Julius Baer & Co.* the parties disputed whether an arbitration clause or forum selection clause controlled the court's jurisdiction. In that case, the parties first entered into a contract with a clause that required all disputes to be resolved through arbitration. A month later the parties entered into another agreement that contained a forum selection clause that read:

> "Without limiting the right of the Bank to bring any action or proceeding against [Waxfield] ... in the courts of other jurisdictions, [Waxfield] hereby irrevocably submits to the jurisdiction of any New York State or Federal court sitting in New York City, and [Waxfield] hereby irrevocably agrees that any Action may be heard and determined in such New York State court or in such Federal court."

*Id.* at 282. Relying on Third Circuit precedent, the court held that "[t]he Forum Selection Clause can be understood . . . as complementary to an agreement to arbitrate." *Id.* at 284-85. It explained,

> [T]here is nothing inconsistent between the arbitration obligation and the instant forum selection clause. Both can be given effect, for arbitration awards are not self enforceable. They may only be enforced by subsequent judicial action. Thus, even if arbitration is completed, the forum selection clause would appear to dictate the location of any action to enforce the award.

*Id.* at 284 (quoting *Patten Sec. Corp. v. Diamond Greyhound & Genetics*, 819 F.2d 400 (3d Cir.1987), *abrogated on other grounds by Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 287 (1988)).

The Second Circuit again examined the relationship between an arbitration clause and a forum selection clause in *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 524 (2d Cir. 2011). In *Applied Energetics* there was also a contract with a clause requiring arbitration and a subsequent contract with a forum selection clause. However, unlike the permissive forum selection clause in *Bank Julius Baer & Co.,* the forum selection clause in *Applied Energetics* was mandatory. The forum selection clause mandated that "'[a]ny dispute' between the parties 'shall be adjudicated' by specified courts," and the arbitration provision also directed that "any dispute ... shall be resolved through binding arbitration." *Id.* at 525. The court

6

held that "[b]oth provisions are all-inclusive, both are mandatory, and neither admits the possibility of the other." *Id.* Thus, the court was forced to determine which clause should be enforced to the exclusion of the other.

The language contained in the Installation Services Agreement and the Retailer Agreement is more similar to the mandatory language in *Applied Energetics* than the permissive language in *Bank Julius Baer & Co.* The forum selection clause states that the state and federal courts of Colorado "shall have exclusive jurisdiction to hear and determine any claims, disputes, actions, or suits." Installation Services Agreement at 7. Similarly, the arbitration clause states that "any and all disputes, controversies or claims . . . shall be resolved solely and exclusively by binding arbitration." Retailer Agreement at 25. These provisions are all-inclusive, mandatory, and neither admits the possibility of the other.

Because the two clauses cannot be read together, I must determine which clause is controlling. More specifically, I must determine if the arbitration clause in the Retailer Agreement modified the forum selection clause in the Installation Services Agreement. When deciding whether parties agreed to arbitrate a matter, courts look to state law. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it 'does not require parties to arbitrate when they have not agreed to do so.'" *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 293-94, (2002)(quoting *Volt Info. Scis., Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L.Ed.2d 488 (1989).

DNS seeks to enforce what it believes is its right to arbitration under the Retailer Agreement, but DNS was not a party to that agreement — the agreement was between PDX and Dish Network, LLC. Under Colorado law, "[t]he right to compel arbitration of a dispute is

7

derived from contract. Thus, one who is not a party to the contract generally cannot compel, or be compelled to participate in, arbitration." *Parker v. Ctr. for Creative Leadership*, 15 P.3d 297, 298 (Colo. App. 2000). "However, a nonparty, such as a third-party beneficiary, may fall within the scope of an arbitration agreement if the parties to the contract so intend." *Id.*

The intent to create a third-party beneficiary must be apparent from the terms of the contract or the surrounding circumstances. *Id.* In *Chandler-McPhail v. Duffey*, 194 P.3d 434 (Colo. App. 2008), the Colorado Court of Appeals explained that "although the factor is not necessarily dispositive, courts have relied heavily on the existence or nonexistence of express terms in an agreement that refer to certain classes of nonparties when determining whether parties intended their agreement to directly benefit certain classes of nonparties." *Id.* at 438. "In contrast to nonparties specifically referred to by terms of an agreement, a nonparty generally cannot enforce contract provisions, or be bound by them, where the provisions do not specifically address the nonparty." *Id.* (citing cases). For example, in *Allen v. Pacheco,* 71 P.3d 375 (Colo. 2003) the Colorado Supreme Court analyzed whether a surviving spouse was required to arbitrate a wrongful death claim arising from her late husband's death. Her late husband signed a contract with his health care provider that said that claims "shall be submitted to binding arbitration if the claim is asserted: By a Member, or by a Member's heir or personal representative." *Id.* at 379. The court held that although the surviving spouse was not a party to the contract, because she was an heir, and heirs were specifically named in the contract, the surviving spouse was a third-party beneficiary, and the arbitration clause applied to her.[1] Similarly, in *Parker v. Center for Creative Leadership,* 15 P.3d 297 (Colo. App. 2000), Center for Creative Leadership (CCL) entered into a contract with U.S. West Marketing Resources

---

[1] The opinion went on to hold that although the spouse was bound by the arbitration clause as a third-party beneficiary, the arbitration clause was not enforceable because it violated the Colorado Health Care Availability Act. *Allen v. Pacheco,* 71 P.3d 375, 381-88 (Colo. 2003)

Group, Inc. (U.S. West) for CCL to provide a leadership conference for U.S. West's employees. The contract included an arbitration clause that required "any claim, controversy or dispute . . . between the parties to this Agreement or between one of the parties to this Agreement and the employees . . . of the other party, shall be resolved by arbitration as prescribed in this section." *Id.* at 298. At the conference, one of the employees was injured and brought suit against CCL including claims of breach of contract as a third-party beneficiary. The court held that as a third-party beneficiary to the contract, the employee was required to arbitrate the dispute. *Id.* at 299.

In determining whether a contract is meant to benefit a third-party, the Colorado courts have at times looked to the language in a particular clause rather than the contract as a whole. For example, in *Parker,* the court held that the arbitration clause was enforceable against the plaintiff. 15 P.3d 297. However, when the defendant also tried to enforce an attorney fee provision against the plaintiff, the court said that this was not permissible under the contract. *Id.* at 299. The attorney's fee provision referred only to the "parties" to the contract and did not include their employees. Therefore, the court held that the employee was not an intended beneficiary of the attorney's fee portion of the contract. *Id.*

In the Retailer Agreement that is before this Court, the parties to that contract — PDX and Dish Network, LLC — stated that both the parties and their affiliates would be bound by the arbitration provision. Thus, it is clear from the language of the contract that the parties intended DNS to be a third-party beneficiary of the arbitration provision. As a third-party beneficiary, DNS can enforce the terms of the contract by requiring that PDX submit its civil conspiracy claim to arbitration. Accordingly, defendant's motion to dismiss plaintiff's civil conspiracy claim and compel arbitration is granted.

**Order**

Defendant's motion to dismiss plaintiff's declaratory judgment claim and civil conspiracy claim [#59] is GRANTED.

DATED this 1st day of July, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge