IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-01699-RBJ-CBS

A PDX PRO COMPANY, INC., an Oregon Corporation,

    Plaintiff,

v.

DISH NETWORK SERVICE, LLC,

    Defendant.

## ORDER

The case is before the Court on defendant Dish Network Service, LLC's motion for sanctions against the plaintiff for alleged discovery violations and the recommendation of United States Magistrate Judge Craig B. Shaffer that monetary sanctions (as yet undetermined) and specific evidentiary limitations be ordered. For the reasons set forth herein the Court accepts the recommendation and imposes the recommended sanctions.

## FACTUAL BACKGROUND

The Court summarized the facts in its order of March 5, 2014 granting in part and denying in part Dish's motion for summary judgment. Briefly, this is a breach of contract case arising from a series of contracts whereunder plaintiff A PDX Pro Company, Inc. performed installation and other after-sale services for Dish customers. The gist of the complaint is that Dish exercised discretion under the written contracts in a manner that thwarted PDX's reasonable expectation of payment for services rendered and therefore breached the implied covenant of good faith and fair dealing.

It is essentially undisputed that PDX's record-keeping was spotty, and that it sometimes did not submit invoices for its work in strict compliance with certain "Business Rules" that Dish incorporated into the contracts. It is also undisputed that Dish agreed to an "Exception" process whereunder PDX could submit documentation of its allegedly unpaid services and be paid notwithstanding its non-compliance with all the rules. The exact nature of the Exception, and whether it was authorized by Dish management in the form described by PDX, are disputed to some extent. In any event, PDX did make an effort to submit documentation under the Exception procedure, and to some extent it was successful in getting additional payments. However, PDX did not have documentation of many of the unpaid services and sought Dish's help in generating appropriate records. PDX claims that Dish was less than fully forthcoming, and that in addition, while PDX was trying to put together more documentation, Dish precipitously set a final deadline that made it all but impossible for PDX to complete the process. Thus, PDX believes that it was still shorted something between $1 and $2 million for services actually performed for Dish. Dish, on the other hand, insists that it has paid every dime to which PDX is entitled.

Recently, as the parties headed down the stretch towards trial (scheduled to begin March 31, 2014), a discovery battle that had been brewing and that had brought the lawyers before this Court and Magistrate Judge Shaffer on several occasions boiled over. It mostly had to do with a continuing dispute over the quality of PDX's response to Interrogatory 4 which asked PDX to "Identify each and every Transaction for which you are seeking relief or compensation in this case and, with respect to each, provide, as applicable [there followed a list of 15 categories of detail required by Dish as to each such transaction]." [ECF No. 88-1 at 10]. PDX's response had been the subject of a motion to compel in October 2013 [ECF No. 87] and became the

centerpiece of Dish's "Motion for Sanctions for Disobedience of Prior Court Orders."  [ECF No. 123].

Judge Shaffer, who has done yeoman's work in dealing with these parties, their discovery disputes, plaintiff's multiple changes of counsel, and related issues, held a hearing on the motion for sanctions on February 26, 2014.  In minute orders issued that date [ECF Nos. 181 and 182] he granted the motion and recommended that this Court preclude PDX and its witnesses from asserting at trial any transaction that was not reflected on a series of spreadsheets produced by PDX on February 25, 2014.  He also recommended that PDX's damages evidence at trial be limited to the 3,541 transactions listed in the spreadsheets, and that PDX be barred from referring to or offering in evidence any document not specifically referenced in the spreadsheets.  Finally, he recommended that PDX and its witnesses be precluded from arguing or insinuating to the jury that PDX's inability to produce additional documents in support of its damage claims was attributable to any fault, action or inaction by Dish.  In addition to the evidentiary sanctions, Judge Shaffer also directed Dish to submit a bill of costs and informed the parties that he might include a recommendation for monetary sanctions against PDX and/or its counsel together with his recommendation on the bill of cost.

Although the recommendation, if accepted by the Court, substantially restricts PDX's evidence at trial, Dish objected to it as not going far enough.  Among other things, Dish expressed concern that PDX would attempt to shift the burden at trial such that Dish would have to disprove PDX's claims.  [ECF No. 188 at 2].  Dish wrote: "With all due respect to Judge Shaffer, however, the recommended sanctions lack the necessary force to clean up the 'train wreck' and return Dish to the position that it would be in if PDX had complied with its discovery obligations back in February *of 2013,* or either of this Court's ensuing discovery orders."  *Id.*

3

(emphasis in original).  Dish also worried that limiting PDX to the spreadsheets still left Dish in the dark. *Id.* at 5.  It is not entirely clear what remedy Dish seeks from this Court, but it appears that the only satisfactory remedy would be to preclude PDX from going to trial at all – a remedy that this Court declined to grant when it ruled on Dish's motion for summary judgment.

Less surprising was the fact that PDX also objected to Judge Shaffer's recommendation. [ECF No. 190].  PDX conceded that it had committed errors and oversights in identifying documents related to its damages, but it denied any intentional abuse and pointed out that it had substantially reduced the number of transactions at issue based on information received from Dish, withdrawal of various claims, and reevaluation of its legal theories. *Id.* at 2.  PDX's primary objection appears to be that it shouldn't be criticized for failure to produce documents that it didn't have or failing to provide details that it could only find in documents it didn't have, particularly since one reason for the unavailability of documentation is that Dish received certain documents generated by PDX and did not return them when PDX needed them for purposes of the Exception process.

The objections became ripe for review by this Court upon the filing of responses to the objections on March 25, 2014.  The next day (yesterday) this Court held a trial preparation conference, during which it learned that the case has taken a most unusual turn.  PDX's lawyers reported that, notwithstanding diligent efforts, they have been unable to develop evidence to prove that they did not receive appropriate compensation in even one of the 3,541 transactions identified in their spreadsheets.  Mind you, this is not because PDX believes it has been fully compensated.  On the contrary, PDX sticks to its contention that it has been undercompensated in a seven figure amount.  But, counsel represent that they cannot prove the amount – or, apparently, any part of it.  This admission, I note, came on the eve of trial, although the case was

filed nearly two years ago.  I pause to say that I am not criticizing PDX's lawyers, whom I believe have diligently tried to salvage as much of a troubled case as they could.

If PDX cannot prove damages, then one might ask how the case can go to trial.  PDX's answer is that it believes it can prove a breach of contract (breach of the covenant of good faith and fair dealing) and, if it does, it will be entitled to an award of nominal damages of one dollar.  Of course, no one would go to trial to obtain one dollar, but PDX's hope is that if a breach is proven and nominal damages are awarded, the Court will award substantial attorney's fees to PDX in post-trial proceedings.  This might be a questionable use of resources, depending upon one's perspective, but I cannot figure out why PDX isn't entitled to make the attempt.  In any event, the present task is to decide what to do with Judge Shaffer's recommendation.

## ANALYSIS

A district court must consider timely objections to a magistrate judge's recommendation on a nondispositive motion and may modify or set aside any part of the order that is clearly erroneous or contrary to law.  Fed. R. Civ. P. 72(a).  I have considered the defendants' motion [ECF No. 123]; the response [ECF No. 144]; the reply [ECF No. 159]; Judge Shaffer's minute orders [ECF Nos. 181 and 182]; Dish's objection [ECF No. 188]; PDX's objection [No. 190]; Dish's response [ECF No. 193]; and PDX' response [ECF No. 194].  I am also generally aware, as indicated above, of the history of discovery disputes in the case.  I do not find that any part of the order was clearly erroneous or contrary to law.

On the contrary, I find and conclude that the recommendation was a measured and reasonable response to a difficult situation to which both parties contributed.  PDX has been a difficult customer to put it mildly.  Just as it had great difficulty getting its act together in terms of its own record-keeping and billing procedures, it has had similar difficulty in responding to

discovery in this case. The difficulty has been compounded by what essentially has been a "moving target" in terms of its claims and theories. Dish is entitled to know what the claims are and to discover what evidence PDX has in support of its claims. But Dish has not necessary been an easy customer either. PDX has repeatedly contended that Dish has the documentation that either proves or disproves its claims, but that it has been like pulling teeth to get it. Dish is a demanding litigant and is not shy about seeking sanctions, including sanctions that would effectively end the case. The record reflects that Judge Shaffer dealt with these disputes thoughtfully and with considerable patience. I have no basis to assign clear error, or indeed any error, to his findings and conclusions.

I do, however, have reason to interpret the recommendation that I now am accepting. One reason that I labeled the recommendation "measured" is that Judge Shaffer limited the evidentiary restrictions to PDX's damages case. That is, PDX may not refer to or offer in evidence any document not referenced on the February 25, 2014 spreadsheets to prove specific amounts of underpayments. Similarly, it cannot argue or insinuate that its inability to produce additional documentary evidence in support of its damages claims is attributable to fault, action or inaction by Dish. To any extent Judge Shaffer's recommendation could be read as providing something more or different from that, the recommendation that I am accepting extends only to proof of damages, meaning actual monetary damages. That, however, appears to be a moot point now with PDX's declaration that it will not attempt to introduce any evidence of actual damages.

What the recommendation does not do is place any restriction on PDX's evidence in proving the alleged breach of contract (other than actual damages). To any extent that the recommendation could be read as placing such restrictions on PDX – as Dish apparently hopes –

I do not accept it. However, I do not read the recommendation that broadly. It may prove to be a fine line that I will need to watch carefully if the case does go to trial, but so be it.

## ORDER

The recommendation of the magistrate judge [EDF No. 182] is approved and accepted, and defendant's motion for sanctions [ECF No. 123] is granted to the extent consistent with this order. The magistrate judge has not yet addressed the specific amount of costs or other monetary sanctions to be imposed on PDX. The Court will address any objection to any monetary award if and when the need arises.

DATED this 27th day of March, 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge