IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-01699-RBJ-CBS

A PDX PRO COMPANY, INC., an Oregon Corporation,

     Plaintiff,

v.

DISH NETWORK SERVICE, LLC,

     Defendant.

---

## ORDER

---

The case is before the Court on defendant's application for an award of attorney's fees. ECF No. 212. Plaintiff responded [ECF No. 225], and defendant replied [ECF No. 228]. The Court directed counsel and the parties to make another serious effort to resolve the matter, taking into account plaintiff's litigation practices and the ultimate lack of merit of its claims but also a realistic assessment of plaintiff's ability to pay. ECF No. 231. The parties did not resolve anything, and the Court held an evidentiary hearing on March 5, 2015. The Court now grants the motion and awards attorney's fees and costs to the defendant in the amount of $775,090.35.

### FACTUAL BACKGROUND

Dish Network Services, LLC sells and leases satellite systems, stand-alone satellite receivers and related accessories. From 2004 through July 2011 PDX was a Dish contractor, providing satellite dish installation, repair and related services to Dish customers in parts of Oregon and Washington. The parties' relationship was defined by a series of three Installation Services Agreements or "ISA's and Dish's "Business Rules."

1

So far as I am aware, PDX's services were competently performed.  However, PDX's bookkeeping and compliance procedures were in disarray.  PDX's President Michael Paxton admitted in a deposition that, at times, PDX's accounting system was something of a "black hole."  Dish's Business Rules provided details as to when and how contractors such as PDX would submit documentation of their claims for payment.  On numerous occasions PDX failed to submit claims for payment within the timeframe required.  PDX eventually requested that Dish make an exception to the Business Rules so that it could submit claims out of time.

Realizing that PDX probably had not been fully paid for its work, Dish did grant an exception and extended the deadline for submitting claims.  Dish also undertook a "reconciliation" process that began in 2006 and was intended to rectify disparities between work performed and payments made.  This process did result in additional amounts being paid to PDX, but PDX continued to experience difficulty documenting its claims.  PDX was still trying to pull together more documentation when Dish, on March 24, 2011, put an April 4, 2011 deadline on the exception and reconciliation process.  That date came and went, and when Dish finally terminated the last ISA on July 11, 2011, PDX believed that there still were more than 20,000 transactions for which it had not been properly paid.

PDX filed this lawsuit on June 29, 2012 seeking additional compensation.  It later filed First, Second and Third Amended Complaints, perhaps in part because during the course of the case PDX was represented by six different lawyers.  In its Third Amended Complaint PDX asserted seven claims for relief: (1) breach of the ISA(s) and their implied covenant of good faith and fair dealing; (2) promissory estoppel; (3) quantum meruit; (4) unjust enrichment; (5) civil conspiracy; (6) declaratory judgment; and (7) negligent misrepresentation.

Multiple complaints and multiple claims inevitably generate substantial motion practice. Dish filed motions to dismiss various claims asserted in each complaint after the first one and, later, a motion for summary judgment.  To an extent they were successful.  In an order issued on July 1, 2013 the Court dismissed the civil conspiracy and declaratory judgment claims.  ECF No. 77.  On March 5, 2014 the Court granted partial summary judgment dismissing the quantum meruit and negligent misrepresentation claims.  ECF No. 185.  The motions and briefing naturally escalated litigation costs.

Recurrent discovery disputes also escalated the litigation costs.  Much of the problem centered on Dish's "Interrogatory 4," included in a set of interrogatories served on December 14, 2012.  In this interrogatory Dish asked PDX to identify each transaction for which it was seeking compensation and provide details such as the work order number, account number, reconciliation type, amount requested, and supporting documentation.  ECF No. 88-1 at 2.  In other words, show us what you think we owe you and why we owe it.  Ultimately PDX filed eight responses to this interrogatory.  In its first and second responses PDX did not identify the number of transactions at issue.  In its third response PDX claimed to have been underpaid for 21,632 transactions.  Subsequent responses decreased the number of transactions to 18,079, then to 16,910, then to 11,481, then to 3,451.  Even with the decreasing number of disputed transactions, PDX was largely unable to provide the additional information about the claims that Interrogatory 4 requested.

Interspersed with the supplements to Interrogatory 4 were repeated hearings on unresolved discovery disputes – one before this Court and seven times before Magistrate Judge Shaffer.  Dish filed its first motion for sanctions based upon discovery violations on October 3, 2013.  ECF No. 87.  The magistrate judge did not award sanctions, but he ordered further

production and warned PDX and its counsel that they could face sanctions, and that plaintiff's recoverable damages could "drop precipitously," if PDX did not produce evidence to support its underpayment claims. *See* Transcript of October 17, 2013 hearing [ECF No. 107] at 62-63, 88, 109.

The problems were not resolved. PDX continued to have difficulty producing evidence supporting its claims. Dish again moved for sanctions on December 16, 2013. ECF No. 123. Dish requested either dismissal of the case or "issue sanctions" plus attorney's fees and costs. *Id.* at 35. The motion became ripe upon the filing of Dish's reply brief on January 23, 2014, and it was heard by Magistrate Judge Shaffer on February 26, 2014. At the conclusion of the hearing Judge Shaffer issued a recommendation that this Court impose certain evidentiary sanctions at trial, namely (1) that PDX be precluded from asserting any transaction other than 3,541 transactions listed on a spreadsheet produced on the previous day (PDX's latest response to Interrogatory 4); (2) that PDX be barred from referring to or offering into evidence any document not referenced on the spreadsheet; and (3) that PDX and its witnesses be precluded from arguing or insinuating to the jury that its inability or failure to produce additional documentary evidence in support of its damages claims was attributable to any fault or inaction by Dish. ECF No. 181. *Id.*

Judge Shaffer also indicated that he considered PDX's conduct to be unreasonable and vexatious, and that after Dish submitted a bill of costs and PDX responded, he would issue a written order imposing monetary sanctions against PDX, counsel, or both. Transcript [ECF No. 184] at 91-93. At PDX's request, the magistrate judge postponed the deadline for Dish to submit a "bill of costs" relating to the monetary sanction until after the trial. Dish ultimately sought a

monetary sanction of a little over $127,000.  ECF No. 207.  There has been no ruling on the monetary sanction and as discussed below, the present order moots the sanctions issue.

Both parties objected to the magistrate judge's sanction order, PDX because it went too far, Dish because it didn't go far enough.  ECF Nos. 188 and 190.  This Court held a final trial preparation conference on March 26, 2014 – five days before trial -- and at that time advised counsel that it would likely affirm the magistrate judge's sanction order.  PDX's counsel then indicated that, due to the recommended evidentiary sanction (which this Court formally approved on March 27, 2014) PDX would not be able to present any evidence of the amount of their claimed damages, even with respect to the 3,541 transactions.  Therefore, while the PDX's President, Michael Paxton, still believed that he was owed between one and two million dollars, PDX would only be able to present evidence of liability and hope to obtain nominal damages and an award of attorney's fees as the prevailing party under the ISA contracts.  Transcript [ECF No. 230] at 8-16.[1]  The Court expressed doubt that it would award a substantial amount of attorney's fees to PDX in that situation.  *Id.* at 8.  Even then the parties were unable to settle the case.

The case went to trial to a jury on March 31, 2014.  By the time the jury was instructed the case boiled down to PDX's claim under Colorado law that Dish breached the implied covenant of good faith and fair dealing.  Specifically, PDX contended that the ISA's had been orally modified by the exception/reconciliation process; that the modified ISA's granted Dish discretion with respect to the timing of submission of late claims; that Dish exercised its discretion in bad faith when it imposed the April 4, 2011 deadline on 11 days' notice; and that Dish thereby deprived PDX of its reasonable expectation that it would be allowed sufficient time

---

[1] Counsel indicated during the March 5, 2015 attorney's fee hearing that the decision to press on to trial was not so much based on a hope of obtaining an award of attorney's fees as it was to "try to negate the inevitable."  I infer that PDX was concerned about an award of attorney's fees against it if dropping the case would make Dish the prevailing party.

to complete the process of pulling its documentation together.  The jury found that the ISA's were not orally modified by the exception process, thus resulting in a verdict and judgment for Dish.

The ISA's provided for an award of attorney's fees to the prevailing party.  Dish now seeks an award of attorney's fees under the 2009 ISA which provides, "In the event of any suit or action to enforce or interpret this Agreement or any provision thereof, the prevailing party shall be entitled to recover its costs, expenses and reasonable attorney fees, both at trial and on appeal, in addition to all sums allowed by law."  ECF No. 212-1 at 8, ¶22.  Plaintiff does not dispute Dish's entitlement to an award of costs and attorney's fees under the contract, but it does dispute the amount.

## ANALYSIS

### A. <u>Applicable Legal Standard</u>.

Reasonableness of attorney's fees based upon a contract is determined according to state law.  *Cf. Jones v. Denver Post Corp.,* 203 F.3d 748, 757 (10th Cir. 2000) (state law applies to a determination of attorney's fees when a federal court exercises jurisdiction over pendent state claims).  However, neither party has suggested that different standards for determining the reasonableness of an attorney's fee apply under federal law and Colorado law.  I conclude that there likely is no difference.

"To determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee."  *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).  The "lodestar" is the product of reasonable hours times reasonable hourly rates.  *Id.*  If the applicant "has carried the burden of showing that the claimed rate and number of hours are

reasonable, the resulting product is presumed to be the reasonable fee contemplated by § 1988."
*Blum v. Stenson*, 465 U.S. 886, 897 (1984).

Rule 1.5(a) of the Colorado Rules of Professional Conduct provides guidance for determining whether the rates and hours are reasonable, and ultimately, whether the fee is reasonable.  As relevant here, the factors include whether the time recorded was necessary; the novelty and difficulty of the work; the skill required; the fee customarily charged in the community for similar work; the amount involved; the experience, reputation and ability of the lawyers performing the work; and the result obtained.  *Id.*

When fees are sought based on a contract, as in the present case, the party seeking payment still has the burden to justify that the fees sought are reasonable.  *See Westar Energy, Inc. v. Lake,* 552 F.3d 1215, 1228 (10th Cir. 2009).  Indeed, the ISA provides only for the recovery of "reasonable" attorney's fees.  Thus, Dish's counsel has the burden of proving the reasonableness of their rates and their hours.

The focus of PDX's objection in the present case is more on the hours than the rates.  Dish has the burden of establishing the reasonableness of the hours for which it seeks a fee award "by submitting meticulous, contemporaneous time records."  *Case v. Unified School Dist. No. 233,* 157 F.3d 1243, 1250 (10th Cir. 1998).  The court must determine whether counsel has exercised good billing judgment with respect to the time recorded and billed.  If practical, the court would examine each time entry and determine whether it was reasonable.  However, where the number of time entries makes an entry by entry review impractical, "'[a] general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use.'"  *Id.* (quoting *Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1203 (10th Cir. 1986)).

**B.  Dish's Evidence regarding Attorney's Fees and Costs.**

Dish applied to the magistrate judge for attorney's fees in the amount of $127,555.75 as a sanction for discovery violations.  ECF No. 207.  That is the amount of attorney's fees Dish attributes to lawyer and paralegal time "in connection with PDX's deficient and inaccurate damages disclosures and responses to Interrogatory 4."  *Id.* at 3.  Judge Shaffer stayed briefing on that application pending this Court's decision on the present motion, presumably because my order might moot the sanctions issue.  *See* ECF No. 220 at 1-2.

The present motion seeks an additional $745,102.35 in additional attorney's fees and costs pursuant to the fee-shifting provision in the ISA.  Alternatively, Dish asks the Court to award that amount plus the amount it submitted to the magistrate judge as a proposed sanction.  I see little to be gained by having the parties complete their briefing on the sanctions application and appear for another hearing in front of the magistrate judge, potentially to be followed by an appeal to this Court.  Therefore, I will deal with the entire attorney fee and cost dispute in this order and under the contractual provision rather than as a sanction.  Accordingly, I address in this order Dish's request for an award of attorney's fees and costs in the total amount of $872,558.10.

In support of its motion Dish submitted the Declaration of Darren E. Nadel, the lead counsel for Dish throughout the case and at trial.  ECF No. 212-5.  Mr. Nadel also testified at length in the March 5, 2015 hearing.  In both the Declaration and his hearing testimony Mr. Nadel addressed the lodestar issues of rates and hours.

Rates.

In his Declaration Mr. Nadel summarized his background and experience.  Briefly, his practice emphasizes complex commercial litigation and employment law.  He was admitted to the bar in California in 1991 and the bar of Colorado in 1996.  He has been a shareholder

(partner) of Littler Mendelson, P.C., a law firm with more than 1,000 lawyers in 60 offices, since 2003.  In his Declaration he also summarized the background and experience of the four associate attorneys and one paralegal who, in additional to Mr. Nadel, recorded most of the time on this matter.  ECF No. 212-5 at ¶¶4-11.

The regular hourly rates of the team members during most of the case were $450 per hour for Mr. Nadel; between $275 and $300 per hour for the four associates; and $210 per hour for the paralegal.[2]  However, Littler Mendelson grants Dish a 10% discount off its regular hourly rates due to the volume of work it does for Dish.

Mr. Nadel testified that Littler Mendelson and a number of other law firms subscribe to a service that obtains financial information on an anonymous basis and then provides aggregate information that gives participants a rough idea of what similar firms are charging for similar work in various regions of the country.  Littler Mendelson then sets what it considers to be competitive rates for the local region.  Unsurprisingly Mr. Nadel regards the rates charged to and paid by Dish in this case to be reasonable for commercial litigation in the Denver market.  He also provided a copy of a fee application that was granted by a Boulder state court judge in 2012, implicitly finding his rate and those of associates working under him on that case to have been reasonable.  ECF No. 212-5 at 10-17.

Hours.

According to Mr. Nadel's Declaration, "over the course of 28 months of negotiations and litigation with PDX, Littler invoiced DISH approximately $1.1 million." *Id.* at 5, ¶14.  This did not include approximately $34,600 of time recorded by members of the team but written off before being billed.  *Id.*  In support of the Declaration Mr. Nadel submitted, among other things,

---

[2] The billing records submitted with the Nadel Declaration reflect that somewhat lower rates were in effect when time was first billed to the account.

Littler Mendelson's itemized time records in this case containing something in the range of 2,000 time entries. ECF Nos. 212-6, -7 and -8. For purposes of Dish's application for an award of attorney's fees Mr. Nadel asked members of his team to review their time entries and identify time that they felt, in retrospect, was inefficient or duplicative. He reviewed the time records as well. As a result, Mr. Nadel eliminated from the pending fee application approximately $42,000 of the amount billed to Dish by members of the team. In addition, he eliminated approximately $165,000 of time recorded by timekeepers other than members of his core team. Dish also chose not to include approximately $21,000 in fees charged by two other firms and apparently billed through Littler Mendelson. Adding those numbers together, approximately $228,000 has been eliminated from the $1.1 million total billed to Dish, leaving the $872,558.10 which Dish now asks the Court to award against PDX.

Specifically, the fees and hours comprising the pending application are as follows:

| Timekeeper | Total Fees (after 10% reduction) | Hours |
|---|---|---|
| Darren E. Nadel | $212,679.00 | 525.25 |
| Michelle L. Gomez | $101,425.50 | 409.80 |
| Jennifer S. Harpole | $150,876.00 | 558.80 |
| Alyson A. Smith | $224,308.80 | 918.20 |
| William E. Trachman | $145,063.80 | 555.80 |
| Karin Elsen | $38,205.00 | 202.80 |
| **TOTAL** | $872,558.10 | 3,170.65 |

## C. PDX's Evidence re Attorney's Fees and Costs.

In its response to the motion PDX asserted that the fees claimed for pleadings, discovery, summary judgment and trial preparation ($115,685.55, $274,347.90, $72,077.40 and $233,824.05 respectively according to PDX's lawyers) appear to be excessive. ECF No. 225 at 3-4. However, PDX submitted no evidence with its response other than copies of excerpts from Littler Mendelson's time records. Furthermore, PDX called no witnesses at the hearing on

10

attorney's fees (counsel stated that PDX could not afford to hire an expert).  Nor did it disclose how much its own attorneys had billed to PDX.  PDX offered as an exhibit a 2011 Colorado Bar Association survey of rates charged, but it was excluded on hearsay grounds.  Thus, the only actual evidence presented by PDX in opposition to Dish's fee application was counsel's cross-examination of Mr. Nadel.

The cross examination focused primarily on two subjects:

Motion for Sanctions

Counsel questioned Mr. Nadel about 15 time entries concerning the Motion for Sanctions for Disobedience of Prior Court Orders filed by Dish on December 16, 2013.  ECF No. 123. These time entries were recorded between November 5 and December 16, 2013.  Thirteen of them were made by associate attorney William E. Trachman, and one each was made by Mr. Nadel and associate attorney Alyson Smith.  Collectively they total 38.9 hours which at the timekeepers' regular hourly rates add up to $11,848.50 but at the discounted rate for Dish add up to $10,664.  *See* ECF No. 212-8 at 11-20.  Counsel was not questioning the rates but was implicitly suggesting that the time might have been excessive.  Mr. Nadel testified as to what the time was for and, implicitly if not explicitly, indicated that he believed the time recorded to have been necessary and reasonable.

I reviewed those time entries, but they represented only part of the time spent on the motion.  The possibility of preparing what became Dish's second motion for sanctions was first mentioned in October 28, 2013 time entries.  However, the actual work was done between November 5 and December 16.  I was able to identify, in addition to the time entries about which PDX counsel had cross-examined Mr. Nadel, 19 time entries by Mr. Trachman that referred to the motion for sanctions and that were later submitted to Magistrate Judge Shaffer (27.2 hours,

$7,888 before discounting); four time entries by Mr. Nadel (5.1 hours; $2,295 before discounting); one by Michelle Gomez (0.4 hours; $110 before discounting); and one by Ms. Elsen (3.0 hours; $630 before discounting). These additional time entries added $10,923 before discounting or $9,830.70 at the Dish rate. *See generally* ECF No. 212-8 at 3-20.

I also looked at the time entries between January 9, 2014 when PDX's response was filed and January 23, 2014 when PDX filed its reply brief. *Id.* at 22-24. The preparation of the reply brief added 17 time entries by Mr. Trachman (35.8 hours; $10,382 before discounting); two time entries by associate attorney Alyson Smith (5.9 hours; $1,298 before discounting); and four time entries by Mr. Nadel (3.5 hours; $1,575 before discounting). At the discounted Dish rate, the reply brief added $11,929.50 to the bill.

Thus, the total discounted amount that I have been able to assign to the December 13, 2013 motion for sanctions and reply is $32,424.20. During her argument at the March 5, 2015 hearing counsel for Dish said that the motion for sanctions briefing "in total" came to something close to $40,000. I'm not sure what all she included in that figure or whether her figures were before discounting.[3]

The question with respect to the motion for sanctions, as I viewed it, is not just whether the time singled out by PDX's counsel for cross-examination was reasonable but instead, whether $32,424 is a reasonable fee for this motion for sanctions. These fees, like the rest of the fees Dish is seeking, have been billed and paid. It appears that all these fees "passed" when they were reviewed by the Dish lawyers, as there were other time entries that referred to the motion for sanctions that were not included in the application to Judge Shaffer and which I likewise did

---

[3] During PDX counsel's argument at the March 5, 2015 hearing it appeared that he might have thought that Dish was billed more than $125,000 for the motion for sanctions. The monetary sanction that PDX ultimately sought was the $127,555.75 that Dish claims it incurred because of PDX's insufficient response to Interrogatory 4. That was not what it cost to prepare the motion.

not include.  I do note that two of the Rule 1.5 factors in particular, the difficulty of the work and the result obtained, weigh in Dish's favor.  A motion seeking both evidentiary and monetary sanctions is not routine, and Judge Shaffer's recommendation for evidentiary sanctions had a significant impact on PDX's ability to quantify damages.  Also, while PDX has no burden to prove the unreasonableness of the hours (or rates), the fact remains that PDX put up very little resistance with respect to the reasonableness of the time spent on this motion.  On balance, I find no rational reason to discount these fees further, and I find that Dish has carried its burden of proof as to them.

<u>Motion for Summary Judgment</u>

The second area of focus in the cross-examination was the preparation of Dish's motion for summary judgment.  ECF No. 124.  Here, in my view, PDX's counsel was exploring more fertile ground.  According to Mr. Nadel, Littler Mendelson timekeepers recorded 288.8 hours on the motion and reply.  The motion was 55 pages long, far exceeding the Court's suggested 20-page limit.  Dish's counsel simultaneously filed a motion to exceed the page limits, and I gritted my teeth and granted it.  Dish then filed a 26-page reply [ECF No. 158], again with a simultaneous motion to exceed the Court's suggested five-page limit for replies.  This time I denied the motion, after which Dish replaced the excessive reply with a shorter version.  ECF No. 164.

I agree with PDX that the motion and reply were excessive.  As I reminded counsel, the only question on motions for summary judgment is whether there is a genuine dispute of material fact.  ECF No. 161.  The all too common practice of seeking summary judgment on claims where there are evident fact disputes is contrary to the purpose of Rule 56 and is one of the reasons that the cost of civil litigation is so high.

Dish's motion for summary judgment began with a list of 72 "undisputed" facts supported by 48 attached exhibits. PDX disputed nearly half of the supposedly undisputed facts, in whole or part. The argument section focused primarily on Dish's statute of limitations defense; PDX's contract and contract-alternative claims (promissory estoppel, quantum meruit and unjust enrichment); and damages. *See* EDF No. 124 at 24-47, 50-54. The motion briefly mentioned the negligent misrepresentation claim, suggesting that Dish's duty to PDX, if any, lay in contract not tort, and that PDX couldn't prove misrepresentation or reliance. *Id.* at 47-50. PDX later conceded the negligent misrepresentation claim and conceded that its quantum meruit claim duplicated its unjust enrichment claim. Those two claims were dismissed. But the Court found that there were genuine issues of material fact in dispute as to the contract, promissory estoppel and unjust enrichment claims, and damages, and the statute of limitations defense. ECF No. 185 at 15, 17.[4]

In short, a huge number of hours were spent on a motion that had little chance of complete success and which ultimately did not accomplish much of anything. I do not doubt that counsel and client believed in their motion, but I repeat that a motion for summary judgment should not be filed unless it can be clearly shown that there are no genuine disputes of material fact for the trier of fact to resolve. That is often a very difficult task. In my judgment, including long lists of facts that are labeled as "undisputed" but are not "undisputed" and piling on dozens of exhibits does not aid the cause.

In the circumstances the Court finds that the hours spent and fees billed on the summary judgment motion were not reasonable and cannot be passed on to PDX. PDX has compiled excerpts from the Littler Mendelson time records that indicate that the fees billed for the motion

---

[4] This was before the trial preparation conference during which PDX's counsel announced that, because of the evidentiary sanctions recommended by the magistrate judge and approved by the Court, they would not be able to put on evidence of the amount of their damages.

for summary judgment, after applying the 10% discount, were $55,236.15.  ECF No. 225-8.

Similarly, PDX compiled excerpts from the billing records indicating that the discounted fees

billed for the reply that the Court rejected were $16,841.25.  ECF No. 225-9.  I have reviewed

those excerpts and find no reason to quarrel with the numbers.[5]

**E.  <u>Conclusions</u>.**

As discussed above, Dish counsel has provided evidence that the rates it charged Dish

were set to be competitive in the Denver market.  Dish provided one court order by a judge who

found Mr. Nadel's rate (and those of associates working under his supervision) to be reasonable.

In this instance the rates were further discounted because of the volume of work Dish provides

the law firm.  The rates are generally similar to rates this Court has seen from other similar law

firms in this market.  PDX essentially did not challenge the rates.  The Court finds that Dish has

carried its burden of establishing that the hourly rates it charged Dish in this case were

reasonable.

Dish has also provided evidence that the hours on which it seeks an award were

reasonable.  Some time was written off before billing.  The time billed was reviewed by Mr.

Nadel and by his team members for purposes of the fee application, resulting in additional

reductions.  Time billed by two other firms that had small roles in the matter was not included in

the application.  Because of these additional reductions, the amount now sought by Dish amounts

to approximately 79% of the amount actually billed to the client and paid.

As indicated, PDX presented essentially no evidence concerning the reasonableness of

the hours other than what it obtained on cross-examination Mr. Nadel.  Counsel ultimately

suggested that, given the number of time entries and the impracticality of the Court's reviewing

---

[5] I also reviewed the time records pertinent to the preparation of the shorter reply brief.  To Dish's credit, it is not asking PDX to pay for that time.  *See* ECF No. 212-8 at 24-25.

all of them, the Court should exercise its discretion and cut the application in half.  That result would not be supported by the evidence and would be little short of arbitrary.

For the most part I conclude that Dish has carried its burden of showing the reasonableness of the time included in its fee application.  Moreover, the very fact that Dish, a frequent and sophisticated consumer of legal services, has paid approximately $1.1 million for representation in its dispute with PDX tends to support the reasonableness of the fees and costs.  Dish had no guaranty that it would prevail or that PDX would be able to pay Dish's fees if Dish did prevail.  Basically, what happened in this case is that PDX set upon a course of litigation without a clear concept of what legal claims to assert or how to marshal the evidence needed to sustain them.  Dish and the team of lawyers from Littler Mendelson defended the case vigorously and successfully.  The litigation costs grew and grew, but frankly, PDX brought much of that on itself by the manner in which it pursued the case.

Nevertheless, I conclude that there are three areas where Dish has not met its burden to establish the reasonableness of the fees they are seeking:

First, I go back to the attorney's fee clause in the contracts: "*In the event of any suit or action to enforce or interpret this Agreement* or any provision thereof, the prevailing party shall be entitled to recover its costs, expenses and reasonable attorney fees, both at trial and on appeal, in addition to all sums allowed by law."  ECF No. 212-1 at 8, ¶22 (emphasis added).  In my view the plain language of the clause suggests that it applies only to fees and costs incurred after a suit or other legal action is commenced.  To the extent the clause could be viewed as ambiguous, I construe it against the draftsman.  According to the Littler Mendelson time records, 28.35 hours of Mr. Nadel's time, recorded at his then regular hourly rate of $440 per hour, and one hour for Ms. Elsen, a paralegal, at her then regular rate of $200/hour, were entered before the lawsuit was

filed.  ECF No. 212-7 at 10.  After applying the Dish 10% discount, the Court reduces the fee application by $11,406.60 to eliminate this time.

Second, as discussed above, I deduct $72,077.40 with respect to the motion for summary judgment.

Third, I will eliminate the time, generally described in the time records as "prepare for and attend the trial," recorded by associate attorney Alyson Smith during the five days of the trial.  I had to do a little estimation on one day's time entry, but I find that approximately 56.5 hours of her time should be excluded on that basis.  *See* ECF No. 212-8 at 44-45.  I do not in any way mean to suggest that Ms. Smith is not an excellent attorney, or that her time is not worth the rate charged.  On the contrary, I had opportunities to observe Ms. Smith's work at various times during the case, including the attorney's fee hearing which she conducted on behalf of Dish, and she has represented Dish well.  While the trial was in session Ms. Smith's primary role appeared to be operating the system for electronic display of exhibits, a function that does not require a lawyer or a lawyer's rates.  However, I do not doubt, as Mr. Nadel testified, that Ms. Smith played a helpful supporting role during the trial week beyond running the computer.  Nevertheless, I do not find it to be reasonable to bill PDX for three Dish lawyers during the trial, particularly given what remained to be tried by the time the case went to trial.[6]  At Ms. Smith's discounted Dish rate ($247.50/hour) that amounts to $13,983.75.

## ORDER

For the forgoing reasons the Court grants Defendant's Application for Attorneys' Fees and Costs Under the 2009 Installation Services Agreement [ECF No. 212] in part.  The Court awards attorney's fees and costs to the defendant, Dish Network Service, LLC, and against the

---

[6] It is hard to quarrel with having two lawyers at trial, especially since PDX itself had two lawyers throughout the trial.

plaintiff, A PDX Pro Co., Inc., in the combined total amount of **$775,090.35**.  This order moots

the matter of a monetary sanction for discovery violations.  The Final Judgment entered on April

7, 2014 will be amended accordingly.

DATED this 20th day of March, 2015.


BY THE COURT:


_____
R. Brooke Jackson
United States District Judge