IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01699-RBJ-CBS

A PDX PRO CO., INC., an Oregon corporation,
        Plaintiff,
v.

DISH NETWORK SERVICE, LLC, a Colorado limited liability company,
        Defendant.

_____

**ORDER REGARDING DEFENDANT'S REQUEST FOR SANCTIONS**
_____

Magistrate Judge Shaffer

     Unlike the toils of Sisyphus, who was condemned to perpetually roll a large boulder up a steep hill, lawsuits and discovery disputes should come to an end.   No one can reasonably dispute that the instant case has run its course, at least at the trial level.

     This matter comes before the court on Defendant Dish Network Service, LLC's (hereinafter "Dish") Motion for Allocation of Sanction Fees (doc. #249).   With these submissions, Dish seeks an order holding Plaintiff A PDX Pro, Co., Inc. (hereinafter "PDX") and two of its attorneys, Richard Oertli and William Groh, jointly and severally liable for financial sanctions attributable to discovery violations in this case.   More specifically, the pending motion seeks an order allocating $127,455.75 in fees that Defendant incurred based upon sanctionable conduct that Dish attributes to Mr. Oertli and Mr. Groh.   Messrs. Oertli and Groh filed separate response briefs (docs. #253 and #251, respectively), which were followed by Dish's Reply in Support of Its Motion for Allocation of Sanction Fees (doc. #254).   On July 31, 2015, Dish filed a Supplement to Motion for Allocation of Sanction Fees (doc. #261), which prompted additional

submissions from Mr. Oertli (doc. #265) and Mr. Groh (doc. #266).   This court held a two-hour

hearing on the pending motion on September 8, 2015.

## PROCEDURAL BACKGROUND

The following pertinent facts have been gleaned from the court's file and exhibits

proffered by Dish and Mr. Oertli and Mr. Groh in support of their respective positions relative to

the pending motion.

PDX commenced this litigation on June 29, 2012 with the filing of a Complaint (doc. #1)

that asserted claims for breach of contract, *quantum meruit*, negligent representation, breach of

the duty of good faith and fair dealing, civil conspiracy, breach of retail agreements, and

declaratory relief.   Plaintiff contended that after executing an Installment Service Agreement to

install satellite television equipment on behalf of Dish, PDX was provided "with Business Rules

that deprived [Plaintiff] of the previously promised independence and subjected PDX to control

by Dish." *See* Complaint, at ¶9.   The Complaint alleged, in part, that

> The Business Rules gave DISH unfettered and unreasonable discretion to deny
> contractors payment for the reasonable value of their services and to impose
> unnecessarily complicated documentation requirements in order to provide DISH
> with an excuse for non-payment based on contractors' errors in completing
> paperwork. The Business Rules obligate contractors to comply with extremely
> tight timelines to resolve payment issues, even though they purport to allow DISH
> to go back indefinitely with no time constraints on its efforts to recover from
> alleged overpayments to its contractors.

*Id.* at ¶¶10 and 11.

Plaintiff initially estimated its damaged at $965,225.32, plus an unknown amount for

receivers that PDX purchased from and then returned to Dish.   As to the latter category of

damages, PDX claimed that it could not quantify its losses more precisely without "complete

equipment payment and RA records [from Dish], as well as all retail exchanges and receiver

2

purchase orders by PDX in order to determine how many receivers are involved and exactly

what amount, if any, [Dish] owes PDX for them."   *See* Scheduling Order (doc. #33), at 9-10.

Dish argued, to the contrary, that "the Business Rules at issue here govern, *inter alia*,

payment disputes for labor and equipment" and establish "specific deadlines in which a payment

must be disputed and explicit instructions setting forth the manner and method by which to do

so."   According to Defendant, "[d]espite these unambiguous directions, including warnings that

jobs submitted outside [the established] deadlines would be rejected by [Dish], PDX consistently

failed to adhere to the Business Rules," which meant that "many of Plaintiff's claims for relief

are . . . barred by the Business Rules."   *Id.* at 5.

Dish served its first set of written discovery on December 14, 2012, including

Interrogatory No. 4 which asked PDX to identify all transactions in dispute in this case and to

provide detailed information regarding those transactions, including a list of the documents

supporting PDX's request for payment on each disputed transaction, and the dates of PDX's

compliance with various aspects of the applicable Business Rules between the parties.   Plaintiff

responded, without objection, to Interrogatory No. 4 on February 11, 2013 by invoking Fed. R.

Civ. P. 33(d)[1] and identifying four pages of computer hard-drive pathways contained in a

hard-drive that PDX did not contemporaneously produce.   That interrogatory response was

---

[1] To rely on Rule 33(d) in lieu of providing a narrative interrogatory response, "the producing party must do four things:   (1) specify for each interrogatory the actual documents where the information will be found; (2) affirm that the information sought in the interrogatory is in fact available in the specified records; (3) demonstrate that directly answering the interrogatory would impose a burden on it; and (4) show that the burden of compiling the information is substantially the same for both parties."   *Hege v. Aegon USA*, LLC, No. 8:10-cv-01578-GRA, 2011 WL 1119871, at *3 (D.S.C. Mar. 25, 2011) (noting that "a Rule 33(d) response is inappropriate where the interrogatory calls for 'the exercise of particular knowledge and judgment on the part of the responding party'").   *Cf.* Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* §2178, p. 90 (2010) (by invoking Rule 33(d), the responding party is affirming "that the information sought by the interrogatory in fact is available in the specified records").   *See also Cleveland Construction, Inc. v. Gilbane Building Co.*, No. CIV A. 05-471-KSF, 2006 WL 2167238, at *5 (E.D. Ky. Jul 31, 2006) (in a case where plaintiff invoked Rule 33(d) in response to an interrogatory that sought to discover the factual basis for plaintiff's damages claim, the court observed that only

signed by PDX's counsel, Richard Oertli,[2] and verified as "true and complete to the best of his

knowledge" by Michael Paxton, PDX's Chief Operating Officer.

After a series of communications between counsel, Dish challenged the adequacy of

PDX's response to Interrogatory No. 4 during a telephone discovery conference with the district

judge on June 6, 2013.   Dish complained that PDX had produced spreadsheets that reflected all

the transactions between the parties, and not specifically the unpaid transactions that formed the

bases for Plaintiff's alleged damages.   *See* Transcript of Proceedings on June 6, 2013 (doc. #66),

at 8.   In response, Plaintiff's counsel advised Judge Jackson that his client did not have

"complete data to prove" its damages and needed additional information from Dish.

> As I understand it, Your Honor, its mostly work orders that were sent in
> electronically.   And my client doesn't have a complete record of what he sent in
> electronically, so he can't reconstitute a lot of his claims.

*Id.* at 10.   Judge Jackson directed Dish to "produce all the work orders" and then had the

following colloquy with Mr. Oertli:

> The Court: And if [Dish does that], then Mr. Oertli, you think you can provide an
> answer to interrogatory 4 that's complete.
>
> Mr. Oertli: Well, I certainly hope the client can, Your Honor.
>
> The Court: Pardon me?
>
> Mr. Oertli: I suspect the client can, Your Honor.   Yes.
>
> The Court: Well, if the client can't produce the information, it's going to be hard
> for the client to prove its case, isn't it?
>
> Mr. Oertli: It's going to be difficult on that damages theory, yes.

---

plaintiff "knows what facts and information it has relied upon to support the allegations made in its complaint" and
it was unlikely that defendant "would view certain facts and occurrences the same way that [plaintiff] does").

[2] Mr. Oertli entered his appearance in this action on January 31, 2013.   Plaintiff's original counsel withdrew on July
17, 2012.   PDX's second counsel of record withdrew from the case on February 1, 2013 after Mr. Oertli filed his
entry of appearance.

*Id.* at 12-13.   At the conclusion of the June 6, 2013 discovery conference, Judge Jackson directed PDX to provide a complete response to Interrogatory No. 4 by July 15, 2013.[3]  *Id.* at 13.  *See also* Minute Order (doc. #63) of June 6, 2013.

On July 3, 2013, Mr. Oertli requested that Dish provide work order data in native Excel format, rather than the PDF format contemplated under the parties' January 9, 2013 Scheduling Order (doc. #33).   Dish honored that request on July 12, 2013 by providing Mr. Oertli with a thumb-drive containing the requested information.   Apparently Mr. Paxton did not receive that data from his counsel until July 16, 2013.   Because of that delayed transmittal, Plaintiff's Supplementation of its Computation of Damages; and Related Supplemented Responses to Interrogatory No. 4 did not incorporate the very information that Mr. Oertli earlier told Judge Jackson was essential to allow his client to prepare a "complete" response to Interrogatory No. 4. *See* Exhibit O submitted with Defendant's Exhibits for Hearing on Allocation of Sanction Fees (acknowledging in paragraph 6 of page 2 that "PDX will not know until July 16, 2013, at the earliest, whether it can use the information on the third thumb drive and whether it will need to supplement again its responses regarding its damages and Interrogatory No. 4").

Not surprisingly, Dish believed that Plaintiff's July 15th supplement still failed to provide the detailed information required by Interrogatory No. 4 and did not identify any supporting documentation.   Moreover, Dish insisted that PDX actually had been paid for many of the 21,632 transactions referenced in the most recent supplement.

---

[3]Although Judge Jackson found Plaintiff's response to Interrogatory No. 4 was deficient, he did not award fees and costs to Dish based upon those discovery shortcomings.   Indeed, Dish could not have recovered attorney fees and costs under Rule 37(a)(5) since the June 6, 2013 discovery conference was not convened in response to a formal motion to compel.   *See* Fed. R. Civ. P. 37(a)(5) (providing that fees and costs may be awarded to a prevailing party "if the motion [to compel] is granted – or if the disclosure or requested discovery is provided after the motion [to compel] was filed").

On September 25, 2013, PDX provided a Second Supplementation of its Computation of Damages; and Related Second Supplemented Responses to Interrogatory No. 4 that referred to 18,079 challenged transactions (down from the prior claim of 21,632 transactions). *See* Exhibit Q (doc. #88-17) attached to Defendant's Motion to Compel. The Second Supplementation stated that Plaintiff could not provide a complete computation of its damages either because Dish had not provided necessary documentation or PDX lacked essential information in its own files. Plaintiff also asserted that it would "determine with more precision the amount of profits and revenues Dish caused it to lose by its bad faith conduct and punitive actions," once Judge Jackson determined "that PDX can recover loss of profits and revenues, in spite of the unconscionable provision in the Installment Agreement purporting to limit the damages PDX may recover."

These representations were squarely at odds with Plaintiff's initial response to Interrogatory No. 4. By invoking Rule 33(d), PDX implicitly represented that all of the information requested in that interrogatory could be gleaned through the computer hard-drive pathways previously identified. *But see Smith v. Sentinel Insurance Co., Ltd.*, No. 10-CV-269-GKF-PJC, 2011 WL 2883433, at *2 (N.D. Okl. Jul. 15, 2011) (finding that defendant's initial invocation of Rule 33(d) was improper and that its interrogatory response was "sloppy, evasive, and deceitful," particularly in light of defense counsel's concession (three months later) that the documents in question did not contain the requested information). *Cf. In re Lithium Ion Batteries Antitrust Litigation*, No. 13-md-0420-YGR (DMR), 2015 WL 4999762, at *2 (N.D. Cal. Aug. 21, 2015) (finding that defendants' reliance on Rule 33(d) was improper given that the referenced documents were plainly incomplete and did not fully contain the information requested in the interrogatory at issue).

On October 3, 2013, Dish filed a Motion to Compel Plaintiff's Response to Interrogatory No. 4, for Order Requiring Compliance with Prior Order, and for Sanctions (doc. #87).   Dish conceded that PDX had produced on September 25, 2013 a new Excel file that identified 8,942 allegedly "unpaid transactions" and 9,137 disputed receivers.   Defendant insisted, however, that this spreadsheet still did not cure all the deficiencies in Plaintiff's earlier responses to Interrogatory No. 4.

> For example, the over 9,000 receivers on which Plaintiff requests payment are identified only by part number, with no information regarding (a) work order numbers; (b) account numbers; (c) reconciliation type; or (d) return authorization numbers, among other missing information.   PDX simply states, "We could not determine on what accounts this receiver was activated on."   This is troubling since PDX would have physically installed any of the receivers it could be paid for, and since it should have records containing all of the information sought by [Dish].

*See* Defendant's Motion to Compel, at 5.   Dish argued that "many of the 'unpaid transactions' remain similarly deficient," that PDX continued to list "transactions on which PDX has been paid," and had failed "to identify any documents supporting the payment amounts requested for any of the over 9,000 receivers and for more than 2,000 of the allegedly 'unpaid transactions.'" *Id.* at 6.[4]   In closing its Motion to Compel, Dish argued that PDX should be prohibited "from presenting any evidence regarding any of the transactions for which its response (sic) are deficient either at trial or in response to dispositive motions filed by [Dish]" and that Defendant "be awarded its reasonable attorney fees pursuant to Rule 37(a)(5)(A)."

In its Response to Defendant Dish's Motion to Compel (doc. #94), PDX maintained that its most recent supplemental response to Interrogatory No. 4 "identified the 'transactions in

---

[4] Dish's counsel had raised many of these same concerns in an email to Mr. Oertli on October 2, 2013.   In his response dated the same day, Mr. Oertli indicated that it would be helpful if defense counsel could indicate in writing "how the most recent supplementation of Interrogatory 4 is deficient," as "[t]he client prepared that

dispute'" and, indeed, reduced Plaintiff's "claims for damages by $611,934" based on the additional information provided by Dish.   PDX also questioned "why a Motion to Compel should be filed for the production of information PDX has repeatedly stated it cannot provide without more data from Dish."   Mr. Oertli assured Dish and the court that he had "been instructed by PDX to be an 'open book' and produce everything relevant."   *Id.* at 3.

At the conclusion of a hearing on October 17, 2013, I directed PDX to provide "a full and comprehensive [Fed. R. Civ. P. Rule] 26(a)(1) disclosure" that included "a computation of your damages by category."   *See* Transcript of Proceedings on October 17, 2013 (doc. #107), at 58. This court also required PDX to "identify each and every document [it] relies upon and intends to use at trial to support [its damages] computation,"[5] and to "identify with particularity in [its Rule] 26(a)(1) disclosures those categories of damages for which [PDX] is lacking documentation,"[6] with the added warning that these disclosures would be subject to Fed. R. Civ. P. 26(g)'s certification requirement.   *Id.* at 58-59.   Counsel was advised not to "let your client send something . . . for which you are not willing to live with the consequences, because under

---

document without input from me."   *See* Exhibit T (doc. #88-22) and Exhibit U (doc. #88-23) attached to Defendant's Motion to Compel.

[5] Rule 26(a)(1)(A)(ii) requires, unless otherwise stipulated or ordered by the court, a party to provide at the outset of the action "a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment."   A party also has a mandatory duty to provide "a computation of every category of damages claimed by the disclosing party – who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered."   *See* Fed. R. Civ. Pro. 26(a)(1)(A)(iii).   Rule 26(e) further imposes a self-executing obligation to supplement or correct initial disclosures   "in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect."   Failure to comply with these disclosure requirements precludes a party from using the undisclosed information "on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless."   *See* Fed. R. Civ. P. 37(c)(1).   In lieu of or in addition to that sanction, the court may grant alternative forms of relief, including "payment of the reasonable expenses, including attorney's fees, caused by the failure."   *Id.*

[6] During that same hearing, this court specifically advised Mr. Paxton that "if you don't provide the detailed information, [Dish's] inevitable next step is going to be to file a motion in limine" asking to "exclude from the jury's consideration any information or any requests for damages regarding these transactions."   *See* Transcript of Proceedings on October 17, 2013 (doc. # 107), at 76.

[Rule] 26(g) if I find that a lawyer has failed to comply with their certification requirement," the court would be required to award fees and costs.   *Id.*   After Mr. Oertli expressed some uncertainty as to his obligations under Rule 26(g), the court explained that the Rule

> does not require the signing attorney to certify the truthfulness of the client's factual responses, rather the signature certifies that the lawyer has a made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive.

*Id.* at 60.   In closing, the court granted in part and denied in part Dish's motion to compel, and specifically declined to award fees and costs to either side.   *Id.* at 116.

Also during the hearing on October 17, 2013, Mr. Oertli orally moved to withdraw from his representation of PDX, suggesting that he had "discussed" that prospect several times with his client.   *Id.* at 69.   Mr. Oertli explained "the client is unhappy with me" and "[t]he feeling is mutual," but then declined to provide more particularized grounds for his request.   *Id.* at 70. This court stated that it would not consider counsel's motion to withdraw "until all discovery is complete," *id.* at 70, and "I resolve all of the disputes about written discovery."   *Id.* at 96.

On October 21, 2013, PDX served its Third Supplementation of its Computation of Damages and Related Third Supplemented Responses to Interrogatory No. 4 (doc. #98).   For several categories of damages, PDX once again claimed it could not provide a "total figure" without additional information from Dish.   Mr. Oertli closed the Third Supplementation with the following "Statement of Counsel:"

> Based on reasonable inquiries, Plaintiff's counsel certifies to the best of his knowledge, information, and belief the information in this **PLAINTIFF'S THIRD SUPPLEMENTATION OF ITS COMPUTATION OF DAMAGES; AND RELATED THIRD SUPPLEMENTED RESPONSES TO INTERROGATORY NO 4** is complete as of the time it is made and is consistent with the discovery rules and warranted by existing law, and that is (sic.) has not been interposed for any improper purpose.   Plaintiff's counsel also represents that he has engaged in extensive communications with Mr. Paxton directly, and with Tim Danley indirectly through Mr. Paxton, and has made

9

> reasonable inquiries into the accuracy of the information being provided, which he believes "are reasonable under the circumstances." *Mancia   v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 357 (D. Md. 2008).   Plaintiff's counsel also represents the relevant circumstances include:   "[t]he number and complexity of the issues"; (ii) "[t]he location, nature, number and availability of potentially relevant witnesses or documents"; (iii) "[t]he extent of past working relationships between the attorney and the client"; and (iv) "[t]he time available to conduct an investigation." *S2 Automation LLC v. Micron Tech., Inc.,* 2012 WL 3656454, *31 (D.N.M. Aug. 9, 2012) (*citing* 6 J. Moore, *Moore's Federal Practice*, § 26.154[2][a], at 26-615 (3d ed. 2012).

*Id.*

William Groh entered his appearance on behalf of PDX on October 24, 2013 and attended Mr. Paxton's deposition the next day.   At that time, "[i]t was Mr. Groh's understanding that PDX's damages calculation was based on a theory that due to the implied covenant of good faith and fair dealing, PDX was entitled to compensation for transactions for which Dish agreed to pay despite its business rules if PDX could demonstrate that it performed the work or provided services."   Mr. Groh also was "under the impression that while the Third Supplementation did not take into account the business rules, it set forth all of the transactions and receivers for which PDX believed it was entitled to payment based on the implied covenant of good faith and fair dealing."   *See* William C. Groh's Response to Defendant's Supplement to Motion for Allocation of Sanction Fees (doc. #267) at 5-6.

During the Paxton deposition, counsel for Dish asked whether the deponent would be surprised "to know that of the 8,000 receivers PDX is claiming it is owed payment on, Dish has records showing that it has paid on over 5,000 of them."   To verify defense counsel's reference to past payments and to further familiarize himself with the case, Mr. Groh undertook to compare the records previously produced by Dish to PDX's damage computation.   As part of that investigation, Mr. Groh contacted Tim Danley, a former PDX employee, regarding the preparation of the spreadsheets produced to Dish pursuant to my October 17 Order.   Mr. Groh's

investigation "ultimately determined that in preparing the Third Supplementation, PDX failed to incorporate data contained" in a spreadsheet previously produced by Dish during discovery.  *Id.* at 7.

On November 7, 2013, Mr. Groh sent an email to Dish's counsel advising that "PDX has discovered there was an error in Plaintiff's Exhibit A to the Third Supplemental Disclosures of Damages relating to receivers" and forwarding a revised spreadsheet prepared by Mr. Danley. *See* Exhibit 4 attached to the Declaration of William C. Groh (doc. #267-3).

On December 11, 2013, Mr. Groh filed a motion to withdraw as counsel for PDX, citing "irreconcilable differences with Plaintiff's primary representative" which made "it impossible to continue as Plaintiff's co-counsel."   During a hearing on December 30, 2013, Mr. Oertli (on behalf of PDX) advised the court that Plaintiff opposed Mr. Groh's motion to withdraw.   *See* Transcript of Proceedings on December 30, 2103 (doc. #167), at 8-9.   I noted Dish's recently filed motion for summary judgment, as well as Defendant's pending motion for sanctions. Although the motion for sanctions primarily was directed to discovery conduct that occurred while Mr. Oertli was PDX's only attorney, Mr. Groh was co-counsel of record during some portion of the disputed process.   Given that Rule 1.16 of the Colorado Rules of Professional Conduct permits a lawyer to withdraw from an engagement if it "can be accomplished without material adverse effect to the interests of the client," and in light of Plaintiff's opposition to Mr. Groh's motion, this court denied without prejudice Mr. Groh's request to withdraw.

Mr. Groh filed a Renewed Expedited Motion to Withdraw (doc. #55) on January 22, 2014, stating that he "[has] reached new irreconcilable differences with Plaintiff's primary representative."   Counsel withdrew this Renewed Expedited Motion on February 23, 2014.   Mr.

Groh filed a   Third Motion to Withdraw as Plaintiff's Counsel (doc. #241) on January 31, 2015,

which Judge Jackson granted on March 5, 2015.

On December 16, 2014, Defendant Dish filed a Motion for Sanctions for Disobedience of

Prior Court Orders (doc. #123).   In this motion, Dish's counsel recounted his client's protracted

and largely unsuccessful efforts to force PDX to comply with its discovery obligations.   More to

the point, Dish insisted that Plaintiff's Third Supplementation had ignored this court's directive

and "instead once again" blamed Dish for PDX's failure to provide the information required by

Interrogatory No. 4.   Plaintiff's Response to Defendant's Motion for Sanctions (doc. #144),

signed by Mr. Oertli, continued to attribute PDX's discovery shortcomings to "complications"

caused by "Defendant's own deficiencies and erroneous statements during the discovery phase in

this case."

At a hearing on February 26, 2014, I specifically found that Plaintiff's October 21, 2013

supplement referenced 16,910 transactions without providing additional information about those

transactions or the documentation that substantiated PDX's claimed damages.   *See* Transcript of

Proceedings on February 26, 2014, (doc. #184), at 87-88.   This court further found that PDX's

"woefully inadequate response" violated Fed. R. Civ. P. 37(c) and was not substantially justified

or harmless.   *Id.* at 88.   In comments made from the bench, I recommended as an appropriate

sanction:   (1) that PDX be barred from seeking damages for any transactions except the 3,541

transactions listed on Plaintiff's latest supplemental spreadsheet; (2) that PDX be barred from

referring to or offering into evidence any document not referenced on that same spreadsheet; and

(3) that PDX and its witnesses be precluded from arguing or insinuating to the jury that

Plaintiff's inability or failure to produce additional documentary evidence in support of its

damages claims was attributable to any fault or inaction by Dish.   *Id.* at 89-91.   I further found

that the recommended sanctions were "commensurate with the discovery violations" and the least onerous sanctions that could be imposed "consistent with the rules and prevailing Tenth Circuit case law."   *Id.* at 91.

Not surprisingly, given the contentious nature of the litigation, neither side was particularly happy with my recommendation.   Dish argued that the proposed sanctions were not sufficiently punitive "to clean up the 'train wreck' and return Dish to the position it would be in if PDX had complied with its discovery obligations back in February of 2013, or either of this Court's ensuing discovery orders."   *See* Defendant Dish's Objections to Magistrate Judge Shaffer's Recommendation as to Sanctions (doc. #188).   PDX insisted, to the contrary, that my recommended sanctions were too harsh, particularly given that Plaintiff had "conceded that it committed errors and oversights in identifying documents related to its damages."   *See* Plaintiff PDX's Objections to Magistrate Judge Shaffer's Sanctions Recommendations (doc. #190). Notwithstanding its admitted shortcomings, PDX noted that it had "successfully reduced the number of transactions at issue in the case," in part by "withdrawing claims for which PDX was ultimately unable to obtain supporting documentation in discovery and partially [by] re-evaluating its legal theory after depositions that occurred in November of 2013."

With an Order (doc. #196) dated March 27, 2014, the district court rejected the parties' countervailing arguments and imposed my recommended sanction.   As Judge Jackson explained

> . . . I find and conclude that the recommendation was a measured and reasonable response to a difficult situation to which both parties contributed.   PDX has been a difficult customer to put it mildly. Just as it had great difficulty getting its act together in terms of its own record-keeping and billing procedures, it has had similar difficulty in responding to discovery in this case.   The difficulty has been compounded by what essentially has been a "moving target" in terms of its claims and theories.   Dish is entitled to know what the claims are and to discover what evidence PDX has in support of its claims.   But Dish has not necessary [sic] been an easy customer either.   PDX has repeatedly contended that Dish has the documentation that either proves or disproves its claims, but that it has been like

> pulling teeth to get it.   Dish is a demanding litigant and is not shy about seeking
> sanctions, including sanctions that would effectively end the case.   The record
> reflects that Judge Shaffer dealt with these disputes thoughtfully and with
> considerable patience. . . .   One reason that I labeled the recommendation
> "measured" is that Judge Shaffer limited the evidentiary restrictions to PDX's
> damages case.   That is, PDX may not refer to or offer in evidence any document
> not referenced on the February 25, 2014 spreadsheets to prove specific amounts
> of underpayments.   Similarly, it cannot argue or insinuate that its inability to
> produce additional documentary evidence in support of its damages claims is
> attributable to fault, action or inaction by Dish.

*See* Order, at 5-6.

This case proceeded to trial on March 31, 2014.   The jury returned a verdict in favor of

Dish on April 4, 2014, and the district court entered a judgment for Dish Network Service, LLC

on April 7, 2014.

Dish subsequently filed an Application for Attorneys' Fees and Costs (doc. #212)

pursuant to the terms of its Installation Services Agreement with PDX, which provided that "in

the event of any suit or action to enforce . . . this Agreement," the prevailing party was entitled to

recover "its costs, expenses and reasonable attorney fees."   After an evidentiary hearing on

March 5, 2015, the district court granted Dish's motion and awarded attorneys' fees and costs to

Defendant in the amount of $775,090.35.   In entering that award, Judge Jackson acknowledged

the contentious pretrial history of this case.

> Recurrent discovery disputes . . . escalated the litigation costs. Much of the
> problem centered on Dish's "Interrogatory 4," included in a set of interrogatories
> served on December 14, 2012. . . Ultimately PDX filed eight responses to this
> interrogatory. In its first and second responses PDX did not identify the number of
> transactions at issue. In its third response PDX claimed to have been underpaid
> for 21,632 transactions. Subsequent responses decreased the number of
> transactions to 18,079, then to 16,910, then to 11,481, then to 3,451.   Even with
> the decreasing number of disputed transactions, PDX was largely unable to
> provide the additional information about the claims that Interrogatory 4 requested.

> Interspersed with the supplements to Interrogatory 4 were repeated
> hearings on unresolved discovery disputes – one before this Court and seven
> times before Magistrate Judge Shaffer.   Dish filed its first motion for sanctions

14

based upon discovery violations on October 3, 2013.   The magistrate judge did not award sanctions, but he ordered further production and warned PDX and its counsel that they could face sanctions, and that plaintiff's recoverable damages could "drop precipitously," if PDX did not produce evidence to support its underpayment claims.

The problems were not resolved. PDX continued to have difficulty producing evidence supporting its claims. Dish again moved for sanctions on December 16, 2013.   Dish requested either dismissal of the case or "issue sanctions" plus attorney's fees and costs.   The motion became ripe upon the filing of Dish's reply brief on January 23, 2014, and it was heard by Magistrate Judge Shaffer on February 26, 2014.   At the conclusion of the hearing Judge Shaffer issued a recommendation that this Court impose certain evidentiary sanctions at trial[.][7]

Judge Shaffer also indicated that he considered PDX's conduct to be unreasonable and vexatious, and that after Dish submitted a bill of costs and PDX responded, he would issue a written order imposing monetary sanctions against PDX, counsel, or both. At PDX's request, the magistrate judge postponed the deadline for Dish to submit a "bill of costs" relating to the monetary sanction until after the trial. Dish ultimately sought a monetary sanction of a little over $127,000.   There has been no ruling on the monetary sanction and as discussed below, the present order moots the sanctions issue.

The Court awards attorney's fees and costs to the defendant, Dish Network Service, LLC, and against the plaintiff, A PDX Pro Co., Inc., in the combined total amount of **$775,090.35**. This order moots the matter of a monetary sanction for discovery violations.

See Order (doc. # 247), at 3- 5 and 17-18 (internal citations omitted).

---

[7]During the hearing before Judge Jackson on March 5, 2015, counsel for PDX acknowledged that

Judge Shaffer asked [PDX] to go through and let him know where all of these transactions were and using
    Dish's Exhibit KP, we did that.   And then, between that time period and when we spoke to you
    [on March 26, 2014], we spent considerable hours running all of these transactions through a
    formula, it going [sic], is the information that supports this particular transaction.   Will it be
    admissible, is there evidence that supports this transaction, is it going to be something that had
    been prior disclosed, pursuant to Judge Shaffer's order; and when we spent hours doing that, we
    were up a creek.

*See* Transcript of Proceedings on March 5, 2015 (doc. #270), at 155-56.

# ANALYSIS

In determining whether, or to what extent, monetary sanctions should be allocated against Mr. Oertli or Mr. Groh, it is important to emphasis the very narrow scope of this Order.   While it is difficult to persuasively argue that PDX timely and thoroughly complied with Judge Jackson's June 6, 2013 directive relating to Interrogatory No. 4, the district court did not award fees and costs in connection with that specific ruling.   It is not my intention to retroactively impose sanctions predicated on Judge Jackson's June 6, 2013.   Indeed, Judge Jackson specifically declined to impose a monetary sanction for discovery violations with his Order of [247].

Similarly, this court cannot impose sanctions against Mr. Oertli or Mr. Groh under Fed. R. Civ. P. 37(c) based upon Plaintiff's failure to comply with its Rule 26(a)(1)(A)(ii) disclosure obligations or its duty to timely supplement or correct disclosures and discovery responses pursuant to Rule 26(e)(1).   The Tenth Circuit recently held that Rule 37(c)(1) does not authorize monetary sanctions against counsel where there is a failure to disclose required information or to supplement an earlier discovery response.   *See Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1226-27 (10th Cir. 2015).   In the same decision, however, the Tenth Circuit acknowledged that "counsel are subject to monetary sanctions for unjustified nondisclosures when they certify a discovery response as complete and correct at the time it is made."   *Id.* at 1227.   The court also warned that "[t]rial counsel must exercise some degree of oversight to ensure that [a client's employees] are acting competently, diligently and ethically in order to fulfill their [discovery] responsibility to the court."   *Id.* at 1229 (quoting *Bratka v. Anheuser-Busch Co., Inc.*, 164 F.R.D. 448, 461 (S.D. Ohio 1995).   According to the Tenth Circuit, "'[c]ounsel has an obligation to assure that the client complies with discovery obligations and court orders' and,

16

thus, '*[c]areful inquiry by counsel* is mandated in order to determine the existence of discoverable documents and to assure their production.'" *Id.* (emphasis in original) (quoting *Resolution Trust Corp. v. Williams*, 162 F.R.D. 654, 658 (D. Kan. 1995)).

Moreover, I would be remiss if I did not echo Judge Jackson's observations during the parties' final trial preparation conference:

> My impression -- but you correct me if I'm wrong -- is that this is or at least should have been a fairly straightforward breach-of-contract case where PDX is saying we performed services over a period of years and we don't think we got paid everything to which we were entitled.
>
> But it has gotten complicated. It got complicated first because PDX kept lousy records.   It got complicated second because PDX, when it chose to file the lawsuit, couldn't be satisfied with one claim or two claims, had to file, in shotgun style, multiple claims.
>
> It's been complicated, third, by the changes of counsel representing PDX over time. Including even as applied to counsel sitting here. Motions to withdraw, withdrawals of motions to withdraw, leaving me unsure at times where this case was going.   Complicated, it appears, by some degree of disagreement between counsel and client on the plaintiff's side.   Complicated by discovery disputes that might result in a sanctions order from Magistrate Judge Shaffer.
>
> And I must say complicated by DISH's litigation strategy and tactics which are scorched earth all the way.   Never met a motion they didn't want to file. Never met a motion that couldn't be 55 pages instead of 25, et cetera.

*See* Transcript of Proceedings February 26, 2014 (doc. #227), at 3.

Dish's counsel conceded during the hearing on September 8, 2015, that the narrow issue left for this court to decide is whether monetary sanctions should be allocated against Mr. Oertli or Mr. Groh under Rule 26(g)(3) based upon counsel's actions or inactions in connection with supplemental disclosures provided by PDX on October 21, 2013 and November 7, 2013.   More specifically, Dish contends that Mr. Oertli improperly certified supplemental disclosures that were incomplete or incorrect, particularly in view of the fact that all of the information required

to provide full disclosures had long been in PDX's possession or control.   Dish also argues that Mr. Groh's production of information on November 7, 2013 violated Rule 26(g).

In response, Mr. Oertli insists that his "efforts to assure that PDX was providing all the information required by [this court's] October Order were more than reasonable," particularly in light of Mr. Oertli's repeated warning "that PDX was required to fully identify the documents PDX was ruling on for its damages."   *See* Richard Oertli's Verified Response to Defendant's Motion for Allocation of Sanction Fees (doc. #265).   Mr. Groh maintains that his November 7, 2013 communication to defense counsel and the referenced revised spreadsheet prepared by Mr. Danley did not represent a "Fourth Supplemental Disclosure" subject to the Rule 26(g) certification requirement, but rather documentation responsive to a subpoena duces tecum served on Mr. Danley.   *See* William C. Groh's Response to Defendant's Supplement to Motion for Allocation of Sanction Fees.

Discovery procedures established under the Federal Rules of Civil Procedure seek to further the interests of justice by minimizing surprise at trial and ensuring the discovery of relevant information.   *United States ex rel. Schwartz v. TRW, Inc.*, 211 F.R.D. 388, 392 (C.D. Cal. 2002).   To that end, Rule 26(b)(1) authorizes discovery "regarding any non-privileged matter that is relevant to the claim or defense of any party."   If, however, "primary responsibility for conducting discovery is to continue to rest with the litigants, they must be obligated to act responsibly and avoid abuse."   *See* Fed. R. Civ. P. 26(g), advisory committee's note to 1983 amendment.   *Cf. Qualcomm Inc. v. Broadcom Corp.*, No,. 05cv1958-B (BLM), 2008 WL 66932, at *7 (S.D. Cal. Jan. 7, 2008) ("Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37. . . . This subdivision provides a deterrent to both excessive

discovery and evasion by imposing a certification requirement that obligates each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection."), *vacated in part*, 2008 WL 638108 (S.D. Cal. Mar. 5, 2008); *St. Paul Reinsurance Company, Ltd., CNA v. Commercial Financial Corp.*, 198 F.R.D. 508, 516 (N.D. Iowa 2000) (noting that the Advisory Committee Notes make clear that "Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions").   *But see Markey v. LaPolla Industries, Inc.*, No. 12-4622(JS)(AKT), 2015 WL 5027522, at *18 (E.D.N.Y. Aug. 25, 2015) (although "[t]he imposition of sanctions for a violation of Rule 26(g) is mandatory . . . a court has discretion over '*which* sanction it must impose'") (emphasis in original).

By signing initial disclosures under Rule 26(a)(1), an attorney or party is certifying to the best of their "knowledge, information, and belief formed after a reasonable inquiry" that the disclosure is "complete and correct as of the time it is made."   *See* Fed. R. Civ. P. 26(g)(1)(A). Similarly, an attorney signing a discovery response or objection is certifying, in part, that the response or objection is consistent with the Federal Rules of Civil Procedure and is not intended for any improper purpose such as "to harass, cause unnecessary delay, or needlessly increase the cost of litigation."   *See* Fed. R. Civ. P. 26(g)(1)(B(I) and (ii).[8]

The Federal Rules of Civil Procedure impose a "stop and think" obligation on a party serving initial disclosures, as well as parties serving discovery requests or responses and objections.   Moreover, "[t]he discovery process is subject to the overriding limitation of good faith.   Callous disregard of discovery responsibilities cannot be condoned."   *Asea, Inc. v. Southern Pacific Transportation Co.,* 669 F.2d 1242, 1246 (9th Cir.1981).   *Cf. Trading Technologies International, Inc. v. eSpeed, Inc.,* No. 04 C 5312, 2006 WL 2506293, at *1

(N.D.Ill. Jul. 18, 2006) (noting that "the discovery process depends upon the good faith of the parties and their counsel").

As this court noted in *Sender v. Mann*, 225 F.R.D. 645, 650 (D. Colo. 2004), Rule 26(a)(1) disclosures should be "complete and detailed" and provide the parties "with information essential to the proper litigation of all relevant facts, to eliminat[e] surprise, and to promot[e] settlement."

> In short, the Rule 26(a)(1) disclosure requirements should "be applied with common sense in light of the principles of Rule 1, keeping in mind the salutary purposes that the rule is intended to accomplish.   The litigants should not indulge in gamesmanship with respect to the disclosure obligations."   Counsel who make the mistake of treating Rule 26(a)(1) disclosures as a technical formality, rather than as an efficient start to relevant discovery, do their clients no service and necessarily risk the imposition of sanctions.

*Id.* (internal citations omitted).

Mr. Oertli correctly notes that Rule 26(g) did not require him to certify the "truthfulness" of his client's factual responses to discovery requests.   Rule 26(g) does require counsel to conduct a reasonable inquiry, as measured by an objective, rather than subjective, standard. Moreover,   counsel's certification obligation cannot be divorced from their duty to the court. "As officers of the court, all attorneys conducting discovery owe the court a heightened duty of candor."   *Markey*, 29015 WL 5027522, at *516.

Rule 26(g) compliance focuses on the "thoroughness, accuracy and honesty (as far as counsel can reasonably tell) of the [discovery] responses and the process through which they have been assembled."   *St. Paul Reinsurance Company, Ltd.*, 198 F.R.D. at 516.

> [E]ach signing of a new discovery request, response, or objection must be evaluated in light of the totality of the circumstances known at the time of

---

[8]"[A]n evasive or incomplete disclosure, answer or response must be treated as a failure to disclose, answer, or respond."   Fed. R. Civ. P. 37(a)(4).

signing.   Therefore, the practical import of Rule 26(g) is to require vigilance by counsel throughout the course of the proceeding.

*Id*.   Moreover, counsel is permitted to rely on the assertions of their client that discovery responses are accurate and correct "only 'as long as that reliance is appropriate under the circumstances.'" *HM Electronics, Inc. v. R.F. Technologies, Inc.*, No. 12cv2884-BAS-MDD, 2015 WL 4714908, at *15 (S.D. Cal. Aug. 7, 21015) ("The point of Rule 26(g) is to hold someone personally responsible for the completeness and accuracy of discovery responses"). Therefore, Mr. Oertli's October 21, 2013 certification must be assessed against the totality of information available to him and the circumstances known at the time he filed that certification.

On February 11, 2013, Mr. Oertli certified that Plaintiff's response to Interrogatory No. 4 was proper and consistent with Rule 33(d).   Yet, approximately two months later, Mr. Oertli expressed concern over PDX's "lack of a paper trail to prove up damages" in a April 26, 2013 email to Mike Paxton.   In that same email, Mr. Oertli warned that "action needs to be taken now, or at some point the door will be closed on proving up damages."   *See* Exhibits proffered by Mr. Oertli in connection with the September 8, 2015 hearing.   Within a matter of weeks, Mr. Oertli again expressed concern over PDX's ability to prove its damages.

> When I agreed to represent PDX in the federal litigation, you told me a number of times that I should not worry about damages because you had everything lined up and could prove them easily.   Recently, I have received the opposite message.   I am very concerned.   Without the help of a CPA at some level, PDX may not have provable and recoverable damages . . .

*Id.*

On July 3, 2013, Mr. Oertli explained to Mike Paxton that the supplemental discovery responses required by Judge Jackson should "describe in detail all of PDX's damages."   Mr. Oertli renewed his request that Mr. Paxton enlist the services of an accountant because he (Oertli) was "not capable of describing those damages in sufficient detail."   Only three days

before the deadline set by Judge Jackson to supplement Plaintiff's response to Interrogatory No.

4, Mr. Oertli told Mr. Paxton:

> I need from you your best guess on how much you lost in revenue and/or profits in each year PDX was being punished . . . cut back.   I am relying on you and Tim [Danley] completely for Interrogatory No. 4 . . . .   I will add a long section on Objections and explain why PDX cannot fully identify all of its damages.   After giving this some thought, I think the best option would be to file on Monday whatever we can complete by then; and say PDX will supplement its damages as it reviews the native format[9] information (which should be received by tomorrow) and as it receives additional information from Dish, if any.   That puts the onus on them to complain about PDX being late; and allows us to go to the Judge and give him an earful.

*See* Exhibit G (doc. #261-7) to Defendant's Supplement to Motion for Allocation of Sanction

Fees.

On October 18, 2013, in the wake of this court's order requiring PDX to provide a "full

and comprehensive" disclosure of its damages and supporting documentation, Mr. Oertli

conceded in an email to his client that

> I have no idea how your damages relate to particular documents you sent en masse months ago.   Tim came up with very specific numbers for each claim in the Second Supp.   Now tell me how he came up with those numbers and identify the documents he used to calculate the numbers.   If you do not have supporting documents for a particular category, just say so.[10]

See Exhibits proffered by Mr. Oertli in connection with the September 8, 2015 hearing.   That

same day, Mr. Oertli reiterated his continued concerns with PDX's damage claims:   "What I

---

[9]On July 10, 2013, Mr. Oertli sent an email to Dish's counsel acknowledging that "[w]ith respect to the issue of 'native' format, I have no idea what that means."   Even more remarkable is Mr. Oertli's claim that he had "asked five professional computer experts what the term means, and they have no idea either."   *See* Exhibit AQ included in Defendant's Exhibits for Hearing on Allocation of Sanction Fees.   *But see In re Porsche Cars Northam America, Inc. Plastic Coolant Tubes Products Liability Litigation*, 279 F.R.D. 447, 448 n.2 (S.D. Ohio 2012) ("'native format' means the format of [electronically stored information] in which it was generated and/or used by the producing party in the usual course of business and in its regularly conducted activities.").   *See also Palgut v. City of Colorado Springs*, No. 067-cv-01142-WDM-MJW, 2006 WL 3483442, at *3 (D. Colo. Nov. 29, 2006).

[10]Less than two weeks after he professed ignorance of how PDX's damages related to documents previously produced in discovery and questioned how Tim Danley arrived at his damages calculations, Mr. Oertli sent an email to William Groh in which he insisted that "PDX answered Interrogatory 4 to the best of its ability and then some. . .

suspect is really happening is now that the Court and Dish are pressing hard, you realize that it will soon be obvious that you do not have documents that directly support your claims for damages, which is a concern I have expressed repeatedly from the outset and over the last several months, and which I urged you to address by retaining an accountant."   *Id.*

On October 20, the day before PDX's supplemental disclosures were due, Mr. Oertli continued to question the information he was receiving from his client.

> To make the precise computations that Tim has made, he had to be looking at specific documents in which there are entries he added up to come to the total. You guys must do a better job of describing the documents from which Tim computed the total for each category.

*Id.*

Notwithstanding his obvious reservations, the Third Supplementation tendered by Mr. Oertli on October 21st reiterated PDX's long-standing position that the total amount of its damages "cannot be established at this time because [Dish] has provided for limited periods of time" records that do not "allow PDX to match payment records to actual jobs."

Mr. Oertli's relative passivity after the hearing on October 17, 2013 stands in contrast to Mr. Groh's efforts to investigate and quantify PDX's damages.   Following Mr. Paxton's deposition on October 25, 2013 and in anticipation of Tim Danley's deposition on November 9, 2013, Mr. Groh began to compare PDX's damage computations against the records previously produced by Dish.   That investigation disclosed an "error in Plaintiff's Exhibit A to the Third Supplemental Disclosures" produced in response to this court's Order of October 17.   Mr. Groh advised Dish's counsel of that error in an email sent on November 7, 2013 and provided a corrected spreadsheet.

---

I have yet to understand why the responses are deficient."   *See* Exhibit 8 included in William C. Groh's Exhibit List for September 8, 2015 Hearing.

On January 21, 2014, Mr. Groh wrote to Mr. Paxton regarding PDX's ongoing obligation to supplement its damages claim.

> [O]ur continued impasse on what damages should be claimed in this case has prevented and continues to prevent us from supplementing PDX's damages appropriately.   We believe continued assertion of PDX's current damages calculation would be a violation of Federal Rules of Civil Procedure 26(g) due to the lack of a legal basis to pursue claims for many of the transactions PDX claims as damages.[11]

*See* Exhibit 6 included in William C. Groh's Exhibit List for September 8, 2015 Hearing.

On February 9, 2014, Mr. Groh sent another email to Mike Paxton expressing dismay that he had "never advised me that we had Commpay notes."[12]

> On the contrary, you continuously advised me that we needed account notes.   In fact, when it became apparent that there were notes present in some of the paper work orders, you stated that we needed account notes from Dish because they would have more information.   At no point in this case did you tell me that PDX was sitting on thousands of account notes from Commpay that it had not identified in discovery, nor did you say anything that would have led me to believe this was the case.   I happened to find this information out in January during a conversation with Tim [Danley] about another subject entirely.

*See* Exhibit 9 included in William C. Groh's Exhibit List for September 8, 2015 Hearing.

On February 20, 2014, Mr. Groh sent a letter to Dish's counsel with new information regarding PDX's damage disclosures.   After months of motion practice and protestations from PDX regarding its lack of documentation, Mr. Groh's letter conceded that Plaintiff's prior responses to Interrogatory No. 4 had been incomplete.

> It has come to our attention that in producing his original damage calculation, Tim Danley relied on account notes contained in PDX's Commpay system to

---

[11]PDX and its counsel clearly could not agree on the scope of recoverable damages in this case.   In an email sent to Mike Paxton on July 4, 2013, Mr. Oertli noted that "[f]or several weeks, I have advised you to include damages related to lost profits and revenues, in spite of the provision in the Installment Agreement that purports to prohibit those types of damages."   *See* Exhibits proffered by Richard Oertli in connection with the September 8, 2015 hearing.

[12]The CommPay website advertises that its software "offers the highest quality service, repair, and fulfillment business management software on the market" and that "CommPay for DNS provides all the capabilities to run a Dish Network fulfillment operation."   *See* http://www.commpay.tv/html/products.html.

cross-check his descriptions of events that occurred on certain transactions that took place while PDX was using Commpay. . . . . At this point, we have been unable to determine whether or to what extent the Commpay notes ultimately affected the descriptions provided . . for each individual transaction.   PDX began using Commpay in July of 2007.   As such, this omission potentially affects transactions occurring on or after July of 2007.   These Commpay accounts were produced in discovery as part of the Commpay backup, but were not identified in PDX's damage computation. . . . . In generating his computation, Mr. Danley also indicated in his deposition that he relied on payment information files received from Dish during the second exception.   These documents were not identified by name in PDX's prior damage supplementation.

*See* Exhibit 7 included in William C. Groh's Exhibit List for September 8, 2015 Hearing.

To impose sanctions under Rule 26(g), the court must find that counsel violated his or her certification obligation without substantial justification.   "[S]ubstantial justification" does not mean "justified to a high degree, but .. . justified to a degree that could satisfy a reasonable person."   *Sun River Energy, Inc.*, 800 F.3d at 1127 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).   *Cf. Grider v. Keystone Health Plan Central*, 580 F.3d 119, (3rd Cir. 2009) (suggesting that the "substantial justification" is "satisfied if there exists a genuine dispute concerning compliance") (citing *Tolerico v. Home Depot*, 205 F.R.D. 169, 175-76 (M.D. Pa. 2002)); *Sender*, 225 F.R.D. at 656   ("a party's failure to disclose is substantially justified where the non-moving party has a reasonable basis in law and fact, and where there exists a genuine dispute concerning compliance").

After considering the available record, I conclude that Mr. Groh's communication to defense counsel on November 7, 2013 does not merit sanctions under Rule 26(g).   This court finds that Mr. Groh's efforts after October 24, 2013 to investigate PDX's own records and more accurately quantify his client's damages were reasonable, particularly given his recent entry of appearance and direct communications with Mr. Danley.

The court further finds that Mr. Groh's actions were substantially justified.[13]   Mr. Groh asserts that he forwarded additional information and documentation to Dish's counsel on November 7, 2013 in anticipation of Mr. Danley's deposition on November 9 and in response to the subpoena duces tecum served on Mr. Danley.   That subpoena required, *inter alia,* the production of "all documents, electronically stored information, or tangible things in your possession, custody, or control that you prepared, relied upon, or reviewed in preparation of Plaintiff's Third Supplementation of its Computation of Damages; and Related Third Supplemental Responses to Interrogatory No. 4, dated October 21, 2013."   *See* Exhibit 2 attached to the Declaration of William C. Groh (doc. #267-3).   Rule 26(g), by its very terms, applies to a party's initial disclosures under Rules 26(a)(1) or (3) and every discovery request, response or objection served on or by a party.   On balance, I find that Mr. Groh's actions had a reasonable basis in law and fact and that Dish has raised, at best, a genuine dispute as to the applicability of Rule 26(g) to Mr. Groh's disclosure on November 7.   Accordingly, I will not allocate any sanctions to Mr. Groh.

Turning to Mr. Oertli, he insists that the certification that accompanied PDX's Third Supplementation was "[b]ased on reasonable inquiries," was "complete as of the time it [was] made and [was] consistent with" discovery rules and existing law.   According to Mr. Oertli, his certification was based on "extensive communications with Mr. Paxton directly, and with Tim Danley indirectly through Mr. Paxton," as well as Mr. Oertli's "reasonable inquiries into the

---

[13]I acknowledge the available record is open to interpretation.   The email sent from Mr. Groh to Dish's counsel on November 7 refers to "an error in Plaintiff's Exhibit A to the Third Supplemental Disclosures of Damages" and states that the spreadsheets attached to the email were "prepared by Mr. Danley to account for this discrepancy."   In the same email, Mr. Groh states that the newly prepared documents could be provided to Dish "as a courtesy . . . in advance of Mr. Danley's deposition."   *See* Exhibit 4 attached to the Declaration of William C. Groh (doc. #267-3).

accuracy of the information being provided."   I find that Mr. Oertli's certification is not supported by the factual record.

On February 11, 2013, Mr. Oertli certified, pursuant to Rule 26(g) and Rule 33(d)   that all the information requested in Interrogatory No. 4 could be found in the computer records provided by PDX in response to that discovery request.   Yet Mr. Oertli's own emails over successive months reflect a growing concern that PDX could not properly quantify or substantiate its damage claims.   Mr. Oertli's October 21st certification asserted that he had conducted "reasonable inquiries" based on "extensive communications with Mr. Paxton . . . into the accuracy of the information being provided."   But the emails sent by Mr. Oertli between October 17 and 21, 2013 reveal a persistent lack of confidence in the information counsel was receiving from Mr. Paxton and Mr. Danley, and Mr. Oertli's complete ignorance of his client's own records.   In view of these concerns, Mr. Oertli's apparent failure to personally review the records maintained at PDX's offices in Beaverton, Oregon and to compare those documents against the information previously provided Dish is all the more troubling.   That omission is particularly glaring given the investigative efforts undertaken by Mr. Groh within weeks of entering his appearance in this case.   Mr. Oertli would have the court find that he made "reasonable inquiries to the accuracy of the information being provided," when his own emails clearly convey skepticism as to the content and sources of that information.   By October 21, 2013, Mr. Oertli could no longer reasonably rely on the representations and incomplete information provided by Mr. Paxton.   *Cf. Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 630 (D. Colo. 2007) (nothing that outside counsel "retains an ongoing responsibility to take appropriate measures to ensure that the client has provided all available

information and documents which are responsive to discovery requests"). Yet, Mr. Oertli's October 21, 2013 certification suggests just the opposite.

I also cannot find substantial justification for Mr. Oertli's deficient certification. Counsel suggests that his ability to comply with Rule 26(g) was hampered by PDX's refusal to enlist the services of an outside accountant and by the fact that Mike Paxton prohibited him from communicating directly with Tim Danley during the period leading up to PDX's October 21, 2013 supplemental disclosure.[14]  *See* Exhibit AD included in Defendant's Exhibits for Hearing on Allocation of Sanction Fees.   Neither excuse rises to the level of substantial justification. Mr. Paxton's disinclination to hire an outside accountant, coupled with his own concern over the lack of documentation substantiating PDX's damage claims, should have made Mr. Oertli more vigilant and less inclined to accept Mr. Paxton's representations.  *Cf. Brown v. Tellermate Holdings Ltd.,* No. 2:11-cv-1122, 2014 WL 2987051, at *18 and 20 (S.D. Ohio Jul. 1, 2014) (counsel is expected to "do more than issue a general directive to their client" and "cannot simply take a client's representations about [discovery responses] at face value").   But instead, Mr. Oertli continued to rely exclusively on Mr. Paxton's "best guess" and strained damage theory.   Mr. Oertli's less-than-candid certification was motivated by a desire to protect himself, in lieu of discharging his responsibilities as an officer of the court.

---

[14]In fairness, I note that Mr. Paxton sent an email to Mr. Oertli and Mr. Groh on February 8, 2014, in which he denied that counsel had ever been precluded from communicating with Mr. Danley.   Rather, Mr. Paxton claimed that counsel were expected to first review their questions with him prior to speaking with Tim Danley since "Tim was already working on another project for me, and I did not want him to get frustrated."   *See* Exhibit 9 included in William C. Groh's Exhibits for September 8, 2015 Hearing.   While the court recognizes the self-serving statements provided by Mr. Oertli and Mr. Paxton, a ruling on the pending motion does not require me to resolve these seeming contradictions.

Mr. Oertli cannot avoid sanctions under Rule 26(g)(3) by citing an inability to communicate directly with Mr. Danley.[15]   *Cf. Metropolitan Opera Association, Inc. v. Local 100, Hotel Employees and Restaurant Employees International Union*, 212 F.R.D. 178, 223 (S.D.N.Y. 2003) ("given the almost complete disconnect" between counsel and client, "there [was] simply no way that any discovery response made by counsel could have been based on a reasonable inquiry under the circumstances").   Assuming that Mr. Oertli's account is correct, his claim to have undertaken a "reasonable investigation" rings hollow given the alleged constraints on his ability to access essential information directly.   *Cf. HM Electronics, Inc.,*, 2015 WL 4714908, at *15 (suggesting that counsel did not act reasonably by speaking only to the client and not pursuing additional sources of information).   While a lawyer "need not routinely assume the duplicity or gross incompetence" of his client, counsel cannot ignore "clear warnings as to the accuracy of the data," particularly when he does not have the capacity to confirm that data through access to original documents.   *See also In re Taylor*, 655 F.3d 274, 284-85 (3rd Cir. 2011).   In light of the foregoing record, I find that Mr. Oertli violated Rule 26(g), without substantial justification, by certifying the Third Supplementation on October 21, 2013.

Although Rule 26(g)(3) states that the court "must impose" an appropriate sanction when a violation occurs, the nature or degree of that sanction "is a matter of judicial discretion to be exercised in light of the particular circumstances."   *St. Paul Reinsurance Company, Ltd.*, 198 F.R.D. at 516.   While this court cannot endorse Mr. Oertli's actions relative to the Third Supplementation on October 21, 2013, it also cannot ignore counsel's unsuccessful attempt to withdraw from this case during the hearing on October 17.   At that time, it was clear to the court

---

[15]Mr. Oertli's argument might be more persuasive if there were any indication in the record that he ever visited PDX's office to personally review records maintained by his client or to meet jointly with Mr. Paxton and Mr.

that Mr. Oertli's relationship with Mr. Paxton was strained.   With the benefit of the exhibits and

documents provided by Dish, Mr. Oertli and Mr. Groh, it is also clear that Mr. Oertli was

confronted with a client representative who was fixated on a particular view of the case and

disinclined to consider countervailing arguments or legal advice.   That can lead to a volatile

attorney-client relationship.   Nevertheless, as long as Mr. Oertli remained counsel of record, he

was required to comply with Rule 26(g) and his responsibilities as an officer of the court.

Finally, in determining an appropriate sanction for Mr. Oertli's improper certification on

October 21, I return to Judge Jackson's Order of March 5, 2015.   The contract between Dish and

PDX allocated the risks and attendant costs of litigation to the non-prevailing party.   Judge

Jackson concluded that Dish should recover from PDX the sum of $775,090.35.   In view of

Judge Jackson's order and given the totality of circumstances, I find that the objectives

underlying Rule 26(g) can be advanced effectively by requiring Mr. Oertli to pay to Dish the

sum of $5,000.   I believe that monetary sanction, coupled with the admonitions contained in this

Order, appropriately addresses the narrow issue presented for this court's consideration.   *Cf.*

*Heckler & Koch, Inc. v. German Sport Guns GMBH*, No. 1:11-cv-01108-SEB-TAB, 2015 WL

4878644, at *11 (S.D. Ind. May 22, 2015) (while noting that counsel's conduct was objectively

unreasonable and in reckless disregard of their obligations, the court also observed that

"admonishing [counsel] for his shortcomings" could act as a deterrent for future behavior).

---

Danley.   Whether Mr. Oertli truly was laboring under such a restriction remains unclear, particularly given Mr.
Groh's own interactions with Mr. Danley after October 2014.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Allocation of Sanction Fees (doc. #229) is denied in all respects as to William Groh and granted in part as to Richard Oertli.   Mr. Oertli is hereby required to pay Dish Network Service, LLC the total sum of $5,000 as a sanction under Rule 26(g)(3).   This court will not impose any other sanction against Mr. Oertli.

DATED this 30th day of November, 2015.

BY THE COURT:


s/ Craig B. Shaffer
United States Magistrate Judge